# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Lavertis Stewart (A-15380), ) | |
|     Plaintiff, ) | 12 C 50273 |
| ) | |
| v. ) | |
| ) | Judge Philip G. Reinhard |
| Dr. Mesrobian, et al., ) | |
|     Defendants. ) | |

## ORDER

For the reasons below, defendants' motion to dismiss [92] is denied.

## STATEMENT - OPINION

This case is before the court on remand from the Seventh Circuit Court of Appeals. *See* [49]. After the Seventh Circuit issued its opinion, this court reinstated the case, appointed counsel to plaintiff Lavertis Stewart, an inmate at Dixon Correctional Center, and granted appointed counsel leave to file a second amended complaint. *See* [54].

Plaintiff's appointed counsel filed a second amended complaint on November 3, 2014. *See* [83]. In it, plaintiff alleged that various physicians at the Dixon Correctional Center are liable under 42 U.S.C. § 1983 because they were deliberately indifferent to his medical needs. Specifically, plaintiff complains that defendants Dr. Antreas Mesrobian, Dr. Imhotep Carter, and Dr. Jill Wahl (all current or former physicians at Dixon) were deliberately indifferent because they forced him to wear "Black Box" restraints[1] on his wrists when he was sent from Dixon Correctional Center to the University of Illinois Chicago for medical treatment. In the second amended complaint, plaintiff names Wexford Health Sources, Inc., ("Wexford") Dr. Carter, Dr. Wahl and a handful of other John Does as defendants. *See* [83]. Because Dr. Mesrobian is now deceased, plaintiff has named the Special Representative of Dr. Mesrobian's estate as a defendant.

In response to the second amended complaint, defendants Dr. Wahl and Wexford have filed a motion to dismiss. *See* [92]. In their motion, Dr. Wahl and Wexford argue that plaintiff's claims against them are barred by the relevant statute of limitations. All other defendants have answered the complaint.

---

[1]Black Box restraints are security restraints that cover handcuff locks. The box forms a rigid link between an individual's wrists.

"To survive a motion to dismiss under Rule 12 (b)(6), the complaint must state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013) (internal quotation marks and citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citations omitted). In cases such as these, the inference of liability is only "speculative." *Id.*

When a defendant argues a plaintiff's claims are barred by the relevant statute of limitations the defendant is really asserting an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). The Seventh Circuit has held that dismissing a claim as untimely at the pleading stage is an "unusual step since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc., v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). However, a claim may be dismissed as untimely at the dismissal stage if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

**A. FACTUAL BACKGROUND & PROCEDURAL HISTORY**

The procedural history in this case is more extensive than most at this stage in litigation. As a result, the court finds it beneficial to briefly set forth the factual background and procedural history before proceeding to the merits of defendants' motion.

On July 9, 2012, plaintiff filed a *pro se* complaint along with a motion to proceed *in forma pauperis* alleging various constitutional violations under Section 1983. *See* [1], [5]. Specifically, plaintiff alleged that Dr. Mesrobian (a former physician at Dixon) and a number of John Doe defendants were liable under Section 1983 because they forced him to wear Black Box restraints on his wrists while he was being transported from Dixon Correctional Center to University of Illinois Chicago to receive medical treatment.

After the court screened the complaint and motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915A, it granted plaintiff's motion to proceed *in forma pauperis* on August 8, 2012. *See* [6]. However, because the complaint only stated claims against a deceased party, Dr. Mesrobian, the court determined that plaintiff could not proceed and granted plaintiff leave to file an amended complaint. *See* [6] at 2.

In response to this order, plaintiff filed a motion seeking an extension of time to file an amended complaint on September 19, 2012. *See* [7]. The court granted this motion and gave plaintiff until November 16, 2012 to file an amended complaint. *See* [9].

On November 16, 2012, plaintiff filed an amended complaint and a motion to appoint a special administrator to Dr. Mesrobian's estate. *See* [12]; [13]. After screening the amended

complaint pursuant to 28 U.S.C. § 1915A, the court determined that plaintiff's claims were untimely. The court noted that Section 1983 claims have a two-year statute of limitations and determined that plaintiff filed his initial complaint 18 days late. As a result, the court denied plaintiff's motion to appoint a special administrator and dismissed the case. *See* [17].

Plaintiff filed a timely appeal and on April 14, 2014, the Seventh Circuit Court of Appeals issued an opinion vacating this court's judgment with respect to Dr. Mesrobian's estate and Dr. Carter and remanded the case for further proceedings. *See* [50]. The Seventh Circuit determined that plaintiff's claims were timely because he had alleged that a continual constitutional violation every time he was forced to wear Black Box restraints. It reasoned that because "each instance represents another potential violation and a new limitations period . . .the last violation is what matters." *Stewart v. Special Administrator of the Estate of Antreas Mesrobian et al.*, 559 Fed. Appx. 543, 546 (7th Cir. 2014) (citations omitted).

After receiving the Seventh Circuit's opinion, this court reinstated plaintiff's amended complaint, appointed him counsel, and granted appointed counsel leave to file a second amended complaint. *See* [54].

On May 22, 2014, plaintiff's appointed counsel filed an appearance. *See* [56]. A few days later, plaintiff's counsel asked the court to service the amended complaint and serve the defendants named in the first amended complaint to obtain discovery. Plaintiff's counsel explained that plaintiff wanted to do this while reserving the right to file a second amended complaint in the event discovery revealed additional information. *See* [59]. On June 11, 2014, Magistrate Judge Iain D. Johnston reviewed plaintiff's request and granted plaintiff until June 25, 2014 to file a second amended complaint. *See* [60].

On June 16, 2014, plaintiff moved for an extension of time to file a second amended complaint. *See* [61]. Magistrate Judge Johnston granted this request and eventually, plaintiff was permitted to file a second amended complaint by November 3, 2014. In granting plaintiff's extension of time, the court also extended the time to serve the defendants named in the second amended complaint and gave plaintiff until November 24, 2014 to serve all defendants. *See* [80].

On November 3, 2014, plaintiff filed his second amended complaint. *See* [83]. The second amended complaint asserted three deliberate indifference claims under Section 1983 and alleged that defendants Dr. Imhotep Carter, Dr. Jill Wahl, and the estate of Dr. Mesrobian (all current or former physicians at Dixon Correctional Center) are liable for deliberate indifference. Plaintiff also named Wexford Health Services and a handful of John Does as defendants.

The second amended complaint explains that plaintiff suffers from various medical conditions, including chronic carpal tunnel syndrome in both wrists and chronic bursitis in his right shoulder. Plaintiff claims that these conditions were aggravated when he was forced to wear Black Box restraints for several hours when he was transported from Dixon to University of Illinois Chicago to receive medical treatment. Plaintiff states the restraints were left on "for no less than

eleven hours in December 2008; no less than eight hours on January 27, 2009; and no less than eight hours on March 3, 2009. " [83] ¶ 14. Plaintiff contends every time the Black Box restraints were used the defendants placed his wrists in a twisted position (facing away from one another) to make the restraints more painful. He claims that the last date in which he was forced to wear the Black Box restraints was May 29, 2012. *See* [83] ¶ 43.

Plaintiff alleges that defendants Dr. Carter, Dr. Wahl, and Dr. Mesrobian and various John Does acted with reckless indifference towards his medical needs. Count I of the second amended complaint asserts a deliberate indifference claim against defendants Dr. Carter, Dr. Wahl, John Doe one, and the Special Administrator for the estate of Dr. Mesrobian. Count II is a *Monell* claim against Wexford. In count II, plaintiff alleges that Wexford maintained a policy or procedure that denied plaintiff and other inmates adequate medical care. Count III is a deliberate indifference claim. It is asserted against a number of John Doe defendants.

## B. ANALYSIS

Defendants Dr. Jill Wahl and Wexford were added to this suit when plaintiff filed his second amended complaint in November 2014. These defendants contend they should be dismissed from the suit because plaintiff's claims against them are untimely.

Not surprisingly, plaintiff disagrees. He argues that Federal Rule of Civil Procedure 15 allows him to amend his complaint and add new defendants regardless of the limitations issues because his claims against Dr. Wahl and Wexford relate back to the original complaint. Plaintiff also argues that the Seventh Circuit's opinion in this case supports the addition of Dr. Wahl and Wexford.

> Federal Rule of Civil Procedure 15 governs amended pleadings. Rule 15(c)(1)(C) addresses the relation back of amendments. It provides:
>
> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> . . .
>
> (c) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be in by the amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

4

Rule 15(c) is known as the "relation back" doctrine. *See Jones v. Dart*, No. 12-C-9272, 2013 WL 4854368 at *3 (N.D. Ill. Sept. 11, 2013) (citing *Olech v Vill. of Willowbrook*, 138 F. Supp. 2d 1036, 1040-41 (N.D. Ill. 2000)). The doctrine "seeks to balance the policy of facilitating the resolution of claims on the merits . . . and the guarantee of essential fairness to defendants by ensuring that they receive notice of claims in a reasonable time . . . [.]" *Id.* (internal quotations and citations omitted). Rule 15(c)(3) governs cases where an amended complaint seeks to add a new defendant. It imposes three requirements. First, it requires that the new defendant arise out of the same "conduct, transaction, or occurrence." *Id.* Next, it requires that the defendant receive timely notice of the original claims. Finally, it requires that the defendant knew or should have known that it would have been named in the original pleading. *Id.*

After considering these requirements, the court finds the relation back doctrine applicable in this case. First, there is no doubt that defendants Dr. Wahl and Wexford arise out of the same conduct as the defendants named in the original complaint. Plaintiff has explained that Dr. Wahl was also a physician at Dixon and held the same position as Dr. Mesrobian and Dr. Carter during the relevant time. He claims he received medical treatment from Dr. Wahl in 2009. Wexford is the employer of all of the physicians named in the complaint. Thus, the first requirement for relation back is satisfied.

Next, it is clear that Wexford and Dr. Wahl were served with summons before the court issued deadline. Rule 4(m) generally provides that a defendant must be served with summons within 120 days of when a complaint is filed. *See* Fed. R. Civ. P. 4(m). However, it also states that the court "must extend the time for service" if good cause exists. *See id.* Here, plaintiff's counsel immediately reserved the right to file a second amended complaint and serve additional defendants after she asked the court to serve the first amended complaint on the defendants named in the first amended complaint to obtain discovery. Magistrate Judge Johnston granted plaintiff's request and permitted plaintiff to serve all defendants by November 24, 2014. *See* [80]. Both Wexford and Dr. Wahl were served with summons before this date. *See* [84]; [88]. As such, the second requirement in Rule 15(c) is satisfied.

The third and final requirement under 15(c) is a much closer call. That said, the court concludes that both Wexford and Dr. Wahl should have known they could have been named in the original complaint but for plaintiff's mistake.

In the original *pro se* complaint, plaintiff mistakenly identified Dixon Correctional Center as Dr. Mesrobian's employer. *See* [1] at 2. Since then, plaintiff has learned that all of the medical directors at Dixon were actually employed by Wexford during the relevant time. As the employer of all the physicians at issue in this case, Wexford should have known that but for plaintiff's mistake it could have been brought in the suit. *See Dauost v. Edgewater Medical Center*, No.00-C-4888, 2001 WL 503038 at *2 (N.D. Ill. May 11, 2001) (noting that an employer medical center had notice of a plaintiff's lawsuit because "three of its employees had constructive notice of the lawsuit . . .[.]"). Additionally, the original complaint alleged that the "IDOC['s] [the Illinois Department of Corrections] policy of contouring inmates into the black box restraint serve[s] only [one] purpose[,]

5

"torture."" [1] at 9. While plaintiff did not name IDOC as a defendant in the original complaint, it appears as though plaintiff was attempting to allege a *Monell* claim regarding the use of Black Box restraints. This is similar to the claim plaintiff has asserted against Wexford in the second amended complaint. Thus, the court finds Wexford should have known that it could have been named in the plaintiff's original suit but for a mistake or misunderstanding.

Similarly, Dr. Wahl should have known that she could have been named in the original complaint but for plaintiff's mistake concerning her role as Medical Director. Plaintiff avers that he did not know that Dr. Wahl was the Medical Director at Dixon in 2009 until he filed the second amended complaint. *See* [108] at 7 n.3. He argues that Dr. Wahl had constructive notice of the suit and should have known she could have been named in the initial complaint because plaintiff filed a grievance in 2009 which complained about the use of Black Box restraints by Dixon's Medical Directors. *See* [1] at 10. Dr. Wahl was the Medical Director at Dixon from October 2009 to December 2009. Plaintiff's original complaint asserted claims regarding his treatment from April 2009 to May 2012. *See* [1] at 7-15. Thus, Dr. Wahl was in a position to have known of plaintiff's complaints and in all likelihood should have known that she could have been named as a defendant but for plaintiff's mistake concerning her role as Medical Director.

Dr. Wahl contends that plaintiff must have known of her existence because plaintiff has alleged that Dr. Wahl treated him in 2009. *See* [107] at 11. She argues that this means that plaintiff could not have been mistaken about her identity and therefore cannot argue that relation back is applicable. This argument is without merit.

In 2010, the Supreme Court clarified the way in which courts should address claims under Rule 15(c). *See Krupski v. Costa Crociere S.p. A.*, 560 U.S. 538 (2010). In *Krupski*, a defendant argued a plaintiff's claims were untimely because the plaintiff was aware of the existence of two parties and chose to sue the wrong party. *Id.* at 548-49. The defendant argued that a plaintiff could not apply Rule 15(c) in this instance because the plaintiff could not establish that she made a mistake. *Id.* The Supreme Court rejected this argument and held that even if "a plaintiff knows of a party's existence, [this] does not preclude [a plaintiff] from making a mistake with respect to that party's identity." *Id.* at 549. The Supreme Court continued by explaining that "[a] plaintiff may know that a prospective defendant - call him party A - exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff, may know generally what party A does while misunderstanding the roles that party A and party B played in the conduct, transaction, or occurrence giving rise to [his] claim. If the plaintiff sues party B instead of party A under these circumstances, [he] has made a mistake concerning the proper party's identity . . .[.]" *Id.* (internal quotations omitted).

A similar scenario is present here. It is more than likely that plaintiff was aware of Dr. Wahl's existence based on the allegations he has made concerning the treatment he received from Dr. Wahl in 2009. However, the mere fact that plaintiff was aware of Dr. Wahl's existence does not mean that plaintiff cannot establish that he made a mistake when he failed to name her as a defendant in the original complaint. Plaintiff has explained that he did not know Dr. Wahl was the Medical

Director in 2009 until he filed the second amended complaint. At this stage in the litigation, the court accepts this argument and finds that plaintiff can demonstrate that he made a mistake regarding Dr. Wahl's identity and her role as Medical Director. As such, the court finds plaintiff can satisfy the three requirements for the relation back doctrine and rejects defendants' arguments to the contrary.

The court's conclusion is strengthened by the fact that plaintiff was proceeding *pro se* when he filed his original and first amended complaint. It is well established that filings by *pro se* litigants are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94(2007) ("a document filed *pro se* is to be liberally construed . . . and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted); *see also Jones*, 2013 WL 4854368 at *3 (concluding that defendant Cook County should have known a plaintiff intended to name Cook County as a defendant in part because plaintiff's initial complaint was filed without the assistance of counsel.).

Added support lies within the Seventh Circuit's opinion in this case and the doctrine of equitable tolling. First, in *Stewart*, the Seventh Circuit expressly held that plaintiff's claim against Dr. Carter was timely despite the fact that the limitations period had expired before plaintiff filed his first amended complaint in November 2012. *Stewart*, 559 Fed. Appx. at 547. The Seventh Circuit explained that plaintiff had 120 days to serve any defendants, but this 120 days did not begin "until [this] court granted [plaintiff's] application to proceed in forma pauperis on August 8, 2012[.]" *Id.* (citations omitted). The Seventh Circuit pointed out that plaintiff had met his deadline because he filed his amended complaint "by giving it to the prison mailroom more than three weeks before [the 120 day] deadline." *Id.* It also noted that even though Dr. Carter was never timely served because this court dismissed the amended complaint at screening, "that should not count against [plaintiff] [because] [t]he amended complaint had to pass screening before any defendant could be served with process . . . and the delay attributable to the screening was outside of [plaintiff's] control and constituted good cause to extend the time for notice . . . " *Id.* (citations omitted).

This reasoning is persuasive in concluding that plaintiff's claims against Dr. Wahl and Wexford are also timely. Despite the fact that the limitations period had expired before plaintiff filed his second amended complaint in November 2014, plaintiff's delay in filing was not the result of a lack of diligence. Instead, good cause existed to extend the time for notice for both Dr. Wahl and Wexford and Magistrate Judge Johnston did in fact extend this time and allowed plaintiff until November 24, 2014 to serve both defendants. To now find that plaintiff's claims against Wahl and Wexford are untimely seems inconsistent with the Seventh Circuit's reasoning regarding Dr. Carter.

Finally, the doctrine of equitable tolling also supports a denial of the motion to dismiss. "The doctrine of equitable tolling permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Donald v. Cook County Sheriff's Dept*, 95 F.3d 548, 561 (7th Cir. 1996) (internal quotations and citations omitted). In *Donald*, the Seventh Circuit speculated that equitable tolling may be appropriate where the plaintiff was unrepresented

7

and incarcerated and was unable to identify the individual officers leading up to his injury without the aid of discovery or a court-ordered disclosure of the individual officers' identities. *Id.* at 562. More recently, the Seventh Circuit concluded that a district court erred in not finding equitable tolling appropriate in *Bryant v. City of Chicago*, 746 F.3d 239 (7th Cir. 2014). There, the Seventh Circuit found that the district court "should have equitably tolled the statute of limitations because the plaintiff acted with reasonable diligence" in trying to obtain the identity of unknown defendants. *Id.* at 243-44. In *Bryant*, the Seventh Circuit explained that in cases where equitable tolling is appropriate, the plaintiff is often awaiting a response from the court to proceed with his claims.

This is what happened here. Initially, plaintiff was awaiting a response from this court with respect to whether or not he could proceed with his first amended complaint. After the court erroneously dismissed his case, he filed a timely appeal and had to wait for the Seventh Circuit's decision before proceeding with the case. The Seventh Circuit did not render its opinion until April 2014. While this undoubtedly is beyond the statute of limitations, the time plaintiff had to wait for his appeal to be completed should not be counted against him. In the Seventh Circuit's opinion, it noted that plaintiff actually had filed his first amended complaint "more than three weeks" before his 120 day notice period expired. *Stewart*, 559 Fed Appx. at 547. In theory, this means that plaintiff could have timely added both Dr. Wahl and Wexford and provided notice had it not been for this court's dismissal and his subsequent appeal. Therefore, plaintiff's delay in adding Dr. Wahl and Wexford was not a result of a lack of reasonable diligence and instead was in part due to various court delays. Accordingly, plaintiff's claims against Dr. Wahl and Wexford are not time barred.[2]

For the reasons above, defendants' motion to dismiss [92] is denied.

Date: 2/18/2015                                ENTER:

                                               *Philip G. Reinhard*
                                               ──────────────────────────
                                               United States District Court Judge

Electronic Notices. (LC)

---

[2] It is worth mentioning that the court's conclusion regarding equitable tolling does not mean that plaintiff has an unlimited time to amend and an unlimited time to add additional defendants. Plaintiff's complaint should have been tolled when he delivered his first amended complaint to the prison mailroom in November 2012. At that time he had three weeks before the statute of limitations expired. This three week "clock" continued to run when plaintiff's second amended complaint was due on November 3, 2014 and has now expired. Therefore, any additional defendants plaintiff attempts to add would not be timely under the doctrine of equitable tolling.

8