IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| LAVERTIS STEWART (A-15380), ) | |
| ) | |
| Plaintiff, ) | 12 C 50273 |
| ) | |
| v. ) | |
| ) | Judge Philip G. Reinhard |
| EVANSTON INSURANCE COMPANY as ) | |
| Special Representative for the Estate of ) | |
| ANTREAS MESROBIAN; JILL WAHL; ) | |
| IMHOTEP CARTER; WEXFORD HEALTH ) | |
| SOURCES, INC.; ARTHUR FUNK; JOHN ) | |
| DOE TWO; JOHN DOE THREE; JOHN DOE ) | |
| FOUR; JOHN DOE FIVE; JOHN DOE SIX; ) | |
| JOHN DOE SEVEN; JOHN DOE EIGHT; ) | |
| JOHN DOE NINE; JOHN DOE TEN; JOHN ) | |
| DOE ELEVEN; JOHN DOE TWELVE; JOHN ) | |
| DOE THIRTEEN; JOHN DOE FOURTEEN; ) | |
| and JOHN DOE FIFTEEN, ) | |
| ) | |
| Defendants. ) | |

## ORDER

For the reasons set forth below, plaintiff Lavertis Stewart is ordered to show cause why his claims in the third amended complaint should not be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim with regard to Dr. Imhotep Carter, Dr. Jill Wahl, and John Does Two through Fifteen. Failure to do so will result in summary dismissal of those claims pursuant to 28 U.S.C. § 1915(e)(2) for the reasons set forth more fully below.

If plaintiff wishes to respond, he must do so by July 27, 2015. Defendants Dr. Carter and Dr. Wahl are given leave to reply by August 26, 2015.

## STATEMENT - OPINION

Despite being in the early stages of discovery, this case has a complicated procedural history spanning nearly three years. Upon review of plaintiff's recently filed third amended complaint [132] and Dr. Arthur Funk's motion to dismiss on the grounds that the claims against him are untimely [148], the court has taken occasion to reexamine plaintiff's claims in light of that history pursuant to its continuing screening duty for cases filed *in forma pauperis*. 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court *shall*

1

dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.") (emphasis supplied); *see also Lasley v. Welborn*, 192 F. App'x. 541 (7th. Cir. 2006) (finding that "§ 1915(e)(2) authorized the action taken by the district court" to screen suit eighteen months after filing and dismiss for failure to state a claim); *Holly v. Wexford Health Services, Inc.*, 339 F. App'x. 633, 636 (7th Cir. 2009) (court confronted with basis to dismiss under § 1915(e)(2) "need not wait for a motion to dismiss and can apply [§ 1915(e)(2)] sua sponte"); *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) (because the conditions of § 1915(e)(2) were satisfied, "the suit had to be dismissed; the judge had no choice").

In screening this action, it appears that plaintiff fails to state a claim against Dr. Carter and Dr. Wahl because the allegations against them in the third amended complaint are untimely and do not relate back under Rule of Civil Procedure 15(c)(1)(C). Likewise, the allegations against John Does Two through Fifteen appear either untimely or barred due to the doctrine of law of the case. To understand why, a discussion of the procedural history of this case is appropriate.

**A. FACTUAL BACKGROUND & PROCEDURAL HISTORY**

1. Original Complaint – Filed July 19, 2012.

On July 19, 2012, plaintiff filed his original complaint, alleging a deliberate indifference claim against Dr. Mesrobian, former medical director of Dixon Correction Center, in his individual and official capacity, as well as seven John Doe "correctional officers." [1] at 2, 10 (naming six John Does in the caption but referring to a "#7 c/o" within the body of the complaint). Plaintiff alleged that he suffered from carpal tunnel and bursitis/arthritis, which was aggravated and worsened when the John Doe correctional officers forced him to wear "Black Box" restraints[1] on his wrists when he was sent from Dixon Correctional Center to the University of Illinois Chicago ("UIC") for medical treatment. He alleged that after being forced to wear the Black Box during UIC visits in December of 2008 by John Doe One, January 27, 2009 by John Doe Two, and March 3, 2009 by John Doe Three, he complained to Dr. Mesrobian on March 4, 2009, at which time Dr. Mesrobian agreed to inform the officers not to use the restraints. Nevertheless, plaintiff was again forced to wear the Black Box during subsequent UIC visits on March 31, 2009, by John Doe Four, and April 22, 2009, by John Doe Five. During the April 22, 2009 visit, plaintiff informed John Doe Five that Dr. Mesrobian had agreed to order that the Black Box no longer be used. John Doe Five looked through plaintiff's "medical writ package" for the UIC visit and found no order. John Doe Five then contacted the nursing station and was informed that Dr. Mesrobian would not issue such an order. As plaintiff did not have a medical order exempting him, John Doe Five made him choose whether to wear the Black Box or refuse the UIC visit. Because plaintiff believed his condition was life threatening, he agreed to wear the Black Box despite the pain.

---

[1]Black Box restraints are security restraints that cover handcuff locks. The box forms a rigid link between an individual's wrists.

2

Plaintiff further alleged that despite suffering outward manifestations of injury and meeting with Dr. Mesrobian on April 24, 2009 to again request a "no Black Box" order, plaintiff was again forced to wear the Black Box by John Doe Six during a UIC visit on May 5, 2009, during which John Doe Six informed plaintiff that Dr. Mesrobian had not issued an order. Plaintiff once again requested an exemption order from Dr. Mesrobian on May 8, 2009, but despite admitting that the Black Box was "very painful," Dr. Mesrobian refused to grant plaintiff's request. [1] at 7-8.

Following Dr. Mesrobian's last refusal, plaintiff filed a grievance on June 4, 2009. Plaintiff alleged that "said grievance was not resolved until July 22, 2010, after Dr. Mesrobian was no longer employed at Dixon Correctional Center[.]" [1] at 9. He further alleged that on July 22nd, the grievance was forwarded to the Chief of Health Services for review and final recommendation, who in turn forwarded the grievance to "Dr. Mesrobian's replacement Dr. [Imhotop] Carter," who reviewed plaintiff's request and granted plaintiff a six-month "no Black Box" permit. *Id.* Despite the temporary relief afforded by Dr. Carter's permit, plaintiff alleged that "[t]his too has proven to be problematic because now Dr. Carter is no longer employed at Dixon Correctional Center, and the 'No Black Box' permits prescribed by him has expired. Plaintiff informed the new Doctor of his condition and the need for the 'No Black Box' permit, but on or about May 29, 2012 plaintiff was once again given an ultimatum" by John Doe Seven, after searching plaintiff's writ package and finding no permit, to wear the Black Box or refuse his UIC medical appointment. [1] at 9.

Of note, despite being filed *pro se*, plaintiff's original complaint set forth the specific actions and respective dates he contended were violative of his civil rights. Plaintiff did not name Dr. Carter as a defendant, despite explicitly referring to him as the Medical Director who ultimately replaced Dr. Mesrobian, and he did not allege any action by Dr. Carter which would constitute deliberate indifference as to the Black Box restraints. Indeed, the only action regarding the Black Box that Dr. Carter is alleged to have taken was to grant plaintiff a six-month permit. Plaintiff also did not specifically allege that he was forced to wear the Black Box during any visits between May 5, 2009 and May 29, 2012. While he did refer to a "new Doctor" who apparently refused to grant him a new permit at the time of the May 29, 2012 incident, this individual was not named as one of the John Doe defendants, who plaintiff explicitly referred to throughout the complaint as various corrections officers.

The court dismissed the claims against Dr. Mesrobian without prejudice, finding that he was deceased at the time of filing, and afforded plaintiff time to amend his complaint to name a suable party. [6]. The court also dismissed with prejudice the claims against the John Doe correctional officers because, according to the complaint, whenever plaintiff complained to them about the Black Box, they responded by checking whether plaintiff was medically exempt from wearing the Black Box. The officers only forced plaintiff to choose whether to wear the Black Box or refuse medical treatment after verifying with his medical providers that an exception for the Black Box restraints would not be authorized. Thus, they were only following proper procedures and could not be said to be deliberately indifferent.

3

2. First Amended Complaint – Filed November 16, 2012.

Plaintiff amended his complaint on November 16, 2012, omitting the John Doe defendants, naming the special administrator for Dr. Mesrobian's estate (and asking the court to appoint one), and adding "Dr. Imhotop Carter (in his official capacity only)," as well as the director of the IDOC. While plaintiff's first amended complaint was substantially similar to the original, plaintiff clarified that he was challenging what he believed to be the IDOC's official policy "of contouring inmates into the Black Box Restraint [which] serve[s] only one purpose, 'TORTURE[.]'" [13] at 11. In addition, despite explicitly naming Dr. Carter "in his official capacity only," the first amended complaint also added one sentence of allegations against him: "Dr. Carter was also deliberately indifferent to plaintiff's serious medical needs by requiring him to go out in Black Box's on 1-28-10; 3-9-10; and 5-14-10 before finally issuing a 6-month 'NO BLACK BOX' restraint order at [the Chief of Health Service's] inquiry finalized on 8-28-10." [13] at 10. Finally, the first amended complaint attached a FOIA request to Dixon Correctional Center requesting the names of correctional officers who transported him to UIC on the following dates: "1-27-09; 3-3-09; 3-31-09; 4-22-09; 5-5-09; 6-6-09; 7-30-09; 9-1-09; 10-22-09; 12-8-09; 1-28-10; 3-9-10; 4-29-10; 5-14-10." [13] at 14.

On February 4, 2013, this court summarily dismissed the first amended complaint in its entirety with prejudice. *See* [17]. The court found that the allegations against Dr. Mesrobian and Dr. Carter were untimely. The court also found that the claims against the IDOC failed to state a claim because the Seventh Circuit had previously found the use of Black Boxes to be constitutional.

Of note, following the court's summary dismissal, plaintiff filed a timely 59(e) motion to reconsider [20, 23]. Within the motion, plaintiff reiterated that the claims made against Dr. Carter were only in his official capacity, which plaintiff noted "is not a suit against the official but rather is a suit against the office." *See* [23] at 2. Plaintiff explained that "Dr. Carter is only named in the amended complaint to maintain this suit against the Dixon Correctional Center Medical Director Office," because "the medical director's office was always included in this suit by way of Dr. Mesrobian in both his official and unofficial capacity" and the court had instructed him to substitute a party for Dr. Mesrobian at the time it dismissed his original complaint. *See* [23] at 3. The court denied plaintiff's 59(e) motion to reconsider its previous order and judgment. [25].

3. Plaintiff's Appeal to the Seventh Circuit.

Plaintiff filed a timely notice of appeal on March 25, 2013 [27], and on April 14, 2014, the Seventh Circuit issued its opinion and mandate affirming in part, vacating in part, and remanding the case to the district court. *See Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x. 543 (7th Cir. 2014); [50]. The Seventh Circuit affirmed this court's dismissal of the John Doe correctional officers, finding that plaintiff had not sufficiently alleged deliberate indifference. It also affirmed this court's dismissal of the IDOC and its director, finding that plaintiff's complaint "says too little" to properly allege a departmental policy to "torture" inmates. *Stewart*, 559 F. App'x. at 549.

4

However, the Seventh Circuit found that this court had improperly dismissed the claims against Dr. Mesrobian's estate, directed towards his actions in his individual capacity, as well as the claims against Dr. Carter in his official capacity. First, the panel noted that plaintiff had alleged an ongoing violation of his civil rights which occurred every time he was forced to wear the Black Box. With regard to Dr. Mesrobian, the panel noted that he left his position in October of 2009 and thus plaintiff's claim against him accrued on October 22, 2009, the last time (according to the first amended complaint) that plaintiff was forced to wear the Black Box during his tenure. *See Stewart*, 559 F. App'x. at 547. However, plaintiff had already filed a grievance in June of 2009 with regard to the Black Box restraints, which tolled his claim until grievance procedures were completed. The statute of limitations did not begin to run until August 28, 2010, when plaintiff's grievance was resolved and Dr. Carter issued the six-month permit.

The Seventh Circuit thus found that plaintiff's original complaint, filed in July of 2012, was timely as to the claims against Dr. Mesrobian. And although the November, 2012 first amended complaint was untimely with respect to Dr. Mesrobian's estate, the court found that plaintiff had satisfied the relation back requirement of Federal Rule of Civil Procedure 15(c)(1)(C), which states that an amendment "chang[ing] the party or the naming of the party against whom a claim is asserted" relates back if the claim against the party arose out of the same transaction alleged in the original pleading and if, within the Rule 4(m) period, the party to be amended in received notice such that it would not be prejudiced and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

In analyzing Rule 15(c)(1)(C), the Seventh Circuit primarily focused on whether the "within the Rule 4(m) period, the party to be amended in received notice" requirement could be said to be satisfied given that actual notice (in the form of service of process) had not been sent to any defendants, because this court had dismissed plaintiff's action at the screening stage. The Seventh Circuit found that the absence of service would not be held against plaintiff because it was entirely attributable to delays attributable to screening that were outside his control. The court did not explicitly analyze the other requirements of Rule 15(c)(1)(C), namely whether the claims against Dr. Mesrobian's estate arose out of the same transaction as the original complaint or whether the estate should have known the action would have been brought against it but for a mistake concerning the proper party's identity. This was most likely due to the fact that those requirements were clearly satisfied. It was obvious that plaintiff replaced Dr. Mesrobian with his estate because this court instructed him to correct his mistake in naming the deceased Dr. Mesrobian by naming a proper suable entity, such as the estate. And the claims against the estate in the first amended complaint obviously arose out of the same transaction as the claims against Dr. Mesrobian in the original complaint because they were identical – the estate was chosen because it was the entity potentially liable for the allegations made against Dr. Mesrobian in the original complaint.

With regard to Dr. Carter, the Seventh Circuit explicitly found that the claims nominally against him were "against the medical director in his official capacity." *Stewart*, 559 F. App'x. at 549. Because the official capacity claims were not against Dr. Carter himself, the court made no attempt to identify which dates plaintiff wore the Black Box during his tenure to determine whether the claims were timely, as it had done with Dr. Mesrobian. Instead, the Seventh Circuit found that

5

the official capacity claims were timely in November of 2012 because plaintiff alleged a continuing violation regarding the Black Box, which according to the amended complaint was ongoing as recently as May of 2012 (notably *after* the first amended complaint alleged that Dr. Carter had left as medical director). *Stewart*, 559 F. App'x. at 549. Thus, there was no need to conduct a Rule 15(c)(1)(C) analysis with regard to the official capacity claims, because the statute of limitations had been running for less than a year as to the entity subject to those claims.[2]

Because plaintiff's first amended complaint was not untimely with regard to the claims against Dr. Mesrobian's estate and the official capacity claim against the office of the medical director, the Seventh Circuit vacated this court's dismissal of the action and remanded for further proceedings. *See* [49, 50].

4. The Second Amended Complaint – Filed November 3, 2014.

Following the Seventh Circuit's remand, this court ordered that plaintiff's first amended complaint was reinstated with respect to the official capacity claim against "the medical director of Dixon Correctional Center" and the individual claim against Dr. Mesrobian's estate, and appointed counsel. [54]. Magistrate Judge Johnston granted plaintiff leave to file a second amended complaint, "subject to Federal Rule of Civil Procedure 15" [60], and extended the Rule 4(m) period to October 15, 2014 to serve the existing first amended complaint. [77].

Plaintiff filed a motion to reconsider this last order, requesting an additional extension of the Rule 4(m) period so that he could file his second amended complaint and serve it, rather than the first amended complaint, on Dr. Carter and additional defendants to be added. *See* [78]. In response, Judge Johnston ordered plaintiff to file his amended complaint by November 3, 2014 and extended the Rule 4(m) period to November 24, 2014. [80].

Plaintiff filed his second amended complaint on November 3, 2014. [83]. The second amended complaint continued to name Dr. Mesrobian's estate, but all other parties were changed. Plaintiff replaced the official capacity claims against Dr. Carter with claims against Wexford Health Sources, Inc., the entity that the Dixon medical directors acted for as agents. For the first time, plaintiff named Dr. Carter in his individual capacity. Plaintiff also named Dr. Jill Wahl, acting medical director for Dixon between Dr. Mesrobian and Dr. Carter, in her individual capacity. Finally, plaintiff added fifteen John Doe defendants in their individual capacities. Plaintiff alleged that John Doe One "served as a licensed medical doctor and Medical Director at Dixon during May 2012." [83] at ¶ 8. John Does Two through Fifteen allegedly "served as correctional officers at Dixon" during the relevant incidents. [83] at ¶ 11.

The second amended complaint largely echoed the allegations made against Dr. Mesrobian in the original and first amended complaint, with one significant difference. While the original and

---

[2]Although plaintiff later identified this entity as Wexford Health Sources, Inc., in the original complaint he believed it to be Dixon Correctional Center itself, *see* [1] at 2, and in the first amended complaint he mistakenly named it as "Wexford Correctional Medical Services." *See* [13] at 2.

6

first amended complaints alleged that the April 22, 2009 incident was the first time plaintiff told the John Doe officers about his conversations with Dr. Mesrobian, the second amended complaint alleged that plaintiff referred to those conversations during the March 31, 2009 incident. The second amended complaint alleges that the officers checked with Dr. Mesrobian's office during the March 31st incident and were told that Dr. Mesrobian refused to issue a no Black Box order. Thus, the March 31st incident was also the first time plaintiff was offered the ultimatum whether to wear the Black Box or forgo treatment. According to the second amended complaint, plaintiff again complained and officers again verified that Dr. Mesrobian refused to issue an order during the April 22, 2009 incident. All other allegations with regard to the Black Box incidents alleged in the original complaint are substantially identical.

With regard to Dr. Wahl, plaintiff alleged that he was forced to wear the Black Box on December 8, 2009, during Dr. Wahl's tenure as acting medical director and while plaintiff's grievance was still pending. [83] at ¶ 36. With regard to Dr. Carter, plaintiff alleged that he was forced to wear the Black Box on January 28, 2010, March 9, 2010, April 29, 2010, and May 14, 2010, during Dr. Carter's 's tenure as medical director prior to him issuing the no Black Box permit on August 28, 2010. [83] at ¶ 39. With regard to John Doe One, plaintiff alleged that the no Black Box permit, despite being renewed during Dr. Carter's tenure, "eventually expired in early 2012, after Dr. Carter was no longer the Medical Director at Dixon. John Doe One replaced Dr. Carter as the Medical Director at Dixon." [83] at ¶ 42. Plaintiff alleged that he was forced to wear the Black Box again on May 29, 2012, after the permit expired and during John Doe One's tenure. Finally, plaintiff alleged that John Does Two through Fifteen were the correctional officers who forced him to wear the Black Box during these incidents.

In response, Dr. Carter answered the second amended complaint [90], but defendants Dr. Wahl and Wexford filed a motion to dismiss on the grounds that the claims against them were untimely [92]. This court denied the motion to dismiss on February 18, 2015. [123]. The court found that the claims against Wexford related back to the official capacity claims against Dr. Mesrobian in the original complaint because they arose out of the same conduct, Wexford was served with summons within the Rule 4(m) period, and Wexford should have known it could have been named in the original complaint but for plaintiff's mistake in believing that Dixon Correctional Center, not Wexford, was Dr. Mesrobian's employer.

The court also found that the claims against Dr. Wahl related back to the original complaint because plaintiff was mistaken regarding her role as medical director during some of the time period in which he was forced to wear the Black Box. Crucial to the court's holding was its incorrect belief that "the Seventh Circuit expressly held that plaintiff's claim against Dr. Carter was timely despite the fact that the limitations period had expired before plaintiff filed his first amended complaint in November 2012," [123] at 7, which would necessarily bind this court to find the individual capacity claims against Dr. Carter (and by logical extension, Dr. Wahl) timely due to the law of the case.

7

5. The Third Amended Complaint – Filed April 17, 2015.

On March 6, 2015, plaintiff moved for leave to file a third amended complaint to substitute Dr. Arthur Funk for John Doe One, attaching the proposed third amended complaint to the motion. [124].[3] On April 17, 2015, Judge Johnston granted the motion [133] and plaintiff filed the third amended complaint [132].

The filed third amended complaint is largely identical, with minor modifications, to the proposed third amended complaint attached to plaintiff's motion for leave to file. *Compare, e.g.* [124] at 9, ¶ 8 ("Defendant Funk served as a licensed medical doctor and Medical Director at Dixon from May to June 2012") *with* [132] at ¶ 8 ("Defendant Funk served as a licensed medical doctor and Regional Medical Director for various prisons, including Dixon, from May to June 2012"). It is also substantially similar to the second amended complaint, with several differences. Most notably, Dr. Arthur Funk is substituted for John Doe One. Evanston Insurance Company as Special Representative for the Estate of Antreas Mesrobian is also substituted for Dr. Mesrobian's estate. In addition, the third amended complaint adds additional allegations against John Does Two through Fifteen with regard to the May 29, 2012 incident, alleging that "[o]n this occasion, the Black Box was not working properly. One of John Does Two through Fifteen proceeded to beat the Black Box onto Mr. Stewart's wrists to overcome the malfunction of the Black Box." [132] at ¶ 43.

---

[3]The court notes that in the course of briefing that motion, plaintiff attached a grievance he filed on July 28, 2012 regarding the May 29, 2012 Black Box incident, which was denied on October 17, 2012. *See* [130-3]. It is unclear whether plaintiff appealed the denial, as he could have done within 30 days. *Id.* If he did not, it would appear that all allegations regarding the May 29, 2012 incident would fail because plaintiff failed to fully exhaust his remedies regarding the May 29, 2012 incident. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002) (failure to appeal grievance denial merits dismissal for failure to exhaust pursuant to 42 U.S.C. § 1997e). If he did, grievance procedures would have continued such that any new claims regarding the May 29, 2012 incident may well have been timely with regard to the second amended complaint or even when plaintiff moved for leave to file the third amended complaint on March 6, 2015. *See Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) ("As a party has no control over when a court renders its decision regarding the proposed amended complaint, the submission of a motion for leave to amend, properly accompanied by the proposed amended complaint that provides notice of the substance of those amendments, tolls the statute of limitations, even though technically the amended complaint will not be filed until the court rules on the motion.") (internal citations omitted). However, the 2012 grievance is not included or referenced in any of plaintiff's pleadings and thus at this time the court has not considered it in determining whether to dismiss any of the claims in the third amended complaint pursuant to § 1915(e)(2)(B)(ii). *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (holding that the standard for screening an action under § 1915(e)(2)(B) is the same as for evaluating a motion to dismiss pursuant to Rule 12(b)(6), and applying that standard to avoid relying on matters outside the pleadings).

## B. ANALYSIS

In determining whether the claims against the parties in the third amended complaint are timely, for each party the court must first evaluate whether the party was first named after the statute of limitations had expired with regard to that party. If the statute of limitations had expired, the court must then evaluate whether the claims against the party relate back under Rule 15(c)(1)(C) to an earlier timely complaint. Because the timeliness analysis is different with respect to the various parties, the court will analyze each in turn.

1. Dr. Carter.

Despite never being the subject of a motion to dismiss, the timeliness analysis with regard to Dr. Carter is relatively straightforward. The Seventh Circuit found that the claim against Dr. Mesrobian accrued on the last date plaintiff alleged that he was forced to wear the Black Box during his tenure. On the face of the third amended complaint, the last time plaintiff was forced to wear the Black Box during Dr. Carter's tenure was May 14, 2010. Therefore, the statute of limitations began to run on August 28, 2010, when grievance procedures were completed, and expired in August of 2012, just as it did with regard to Dr. Mesrobian. And as the Seventh Circuit noted with regard to Dr. Mesrobian, this means that the claims against Dr. Carter in the original complaint were timely, but not those in the first amended complaint. Dr. Carter was not named in his individual capacity until the November 3, 2014 second amended complaint, and thus the claims against him are untimely unless they relate back to the original complaint under Rule 15(c)(1)(C). In other words, the claims are untimely unless the second amended complaint substituted Dr. Carter for a party named in the original complaint due to plaintiff's mistake regarding the proper party's identity.

The original complaint names Dr. Mesrobian and John Does One through Seven. [1]. The John Does are explicitly alleged to be correctional officers, so the only possible mistake would be in naming Dr. Mesrobian rather than Dr. Carter. But there is no reason to suspect there was any such mistake. First, despite being filed *pro se*, the original complaint is extremely clear in alleging specific wrongful actions taken by Dr. Mesrobian and alleging specific dates on which plaintiff's resulting injury occurred. Plaintiff alleges that Dr. Mesrobian was deliberately indifferent because he explicitly refused to issue plaintiff a no Black Box permit in the face of plaintiff's repeated requests, despite being personally familiar with plaintiff's clinical situation. As a result, plaintiff alleges he was forced to wear the Black Box (following this lack of intervention) on April 22, 2009 and May 5, 2009, both of which took place during Dr. Mesrobian's tenure as medical director.[4] He alleges that he then filed a grievance, which ultimately resulted in Dr. Carter, explicitly referenced as "Dr. Mesrobian's replacement," issuing him a no Black Box permit. [1] at 10. Finally, plaintiff

---

[4]While plaintiff alleged additional dates he was forced to wear the Black Box in subsequent complaints, for purposes of relation back the original complaint must be taken on its own terms. And in the original complaint, plaintiff clearly alleges seven separate incidents in which he was forced to wear the Black Box, and he names seven separate John Doe correctional officers for each of those seven respective claims. Plaintiff's allegations against Dr. Mesrobian explicitly relate to the two incidents which occurred after plaintiff began complaining to him about having to wear the Black Box.

alleges that *after* Dr. Carter left as medical director, the permit expired and he was again forced to wear the Black Box on May 29, 2012. A close reading of the original complaint thus makes clear that there is no overlap between plaintiff's allegations of wrongdoing and Dr. Carter's tenure as medical director – plaintiff only complains of actions taken before Dr. Carter arrived or after he left.

It is equally clear from the original complaint that plaintiff was aware, not simply of Dr. Carter's existence, but also his role with regard to plaintiff's allegations. In *Krupski*, the Supreme Court held that a plaintiff could mistakenly name the wrong party for purposes of Rule 15(c)(1)(C)(ii), despite being aware of the proper party's existence, due to a misunderstanding of the role that the respective parties played in regard to the underlying claim. *See Krupski v. Costa Crociere S.p. A.*, 560 U.S. 538, 549 (2010) ("[A] plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim."). Here, unlike the situation contemplated in *Kruspki*, there is no reason to doubt that the original complaint correctly sets forth Dr. Carter's role and actions with regard to the allegations in that complaint. Plaintiff set forth specific dates that he was forced to wear the Black Box, April 22, 2009 and May 5, 2009, and plaintiff continues to allege in the third amended complaint that those incidents occurred before Dr. Carter's tenure. Plaintiff alleged, and continues to allege, that he filed a grievance which ultimately resulted in Dr. Carter, as the new medical director, issuing a no Black Box permit. The fact that plaintiff has since added new and separate allegations of wrongdoing does not mean that he was mistaken with regard to his allegations in the original complaint.

Thus, it appears that the claims against Dr. Carter are untimely and there was no mistake which would justify relation back under Rule 15(c) with regard to the original complaint.[5]

---

[5]While not crucial to the timeliness analysis, plaintiff's own filings in this case would make it difficult to find that Dr. Carter "knew or should have know" during the Rule 4(m) period that the action would have been brought against him but for a mistake concerning the proper party's identity. *See Krupski*, 560 U.S. at 548 ("Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period . . . . Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity."). Following this court's dismissal of the first amended complaint, and before Dr. Carter was served, plaintiff filed a 59(e) motion in which he essentially admitted that Dr. Carter was never intended to be named in his individual capacity in either the original or first amended complaint. Plaintiff himself explained that an official capacity claim "is not a suit against the official but rather is a suit against the office," and that "Dr. Carter is only named in the amended complaint to maintain this suit against the Dixon Correctional Center Medical Director Office," which plaintiff later learned was Wexford, because "the medical director's office was always included in this suit by way of Dr. Mesrobian in both his official and unofficial capacity" and the court had instructed him to substitute a party for Dr. Mesrobian at the time it dismissed his original complaint. *See* [23] at 2-3.

2. Dr. Wahl.

The claims against Dr. Wahl appear to be untimely for the same reason. In his third amended complaint, plaintiff alleges that Dr. Wahl was acting medical director for Dixon Correctional Center from October of 2009 to December of 2009, between the tenures of Dr. Mesrobian and Dr. Carter. [132] at ¶ 6. Thus, like Dr. Mesrobian and Dr. Carter, the statute of limitations began running with regard to Dr. Wahl when grievance procedures were completed on August 28, 2010, and expired in August, 2012. Dr. Wahl was first named in the second amended complaint on November 3, 2014, and thus the claims against her are untimely unless they relate back under Rule 15(c)(1)(C) to the original complaint.

As discussed with regard to Dr. Carter, the only possible party to substitute in the original complaint is Dr. Mesrobian. And for the same reasons, there appears to be no mistake. Plaintiff challenged decisions made by Dr. Mesrobian in March, April, and May of 2009, and being forced to wear the Black Box on April 22, 2009 and May 5, 2009. He did not reference being forced to wear the Black Box during Dr. Wahl's tenure, nor did he allege any decisions which could be attributed to her. Thus, the Rule 15(c) relation back analysis with regard to Dr. Carter applies equally to Dr. Wahl.

Complicating matters is this court's previous order denying Dr. Wahl's motion to dismiss the claims against her as untimely. The court's decision at that time stemmed in part from its misapprehension that on appeal "the Seventh Circuit expressly held that plaintiff's claim against Dr. Carter was timely despite the fact that the limitations period had expired before plaintiff filed his first amended complaint in November 2012." [123] at 7 (citing *Stewart*, 559 F. App'x. at 547). Based on the court's belief as to what constituted the law of the case, it appeared that the timeliness analysis with regard to Dr. Wahl should be analogous as to that with regard to Dr. Carter. And indeed the timeliness analysis regarding the two is analogous, but as explained above, a closer reading of the Seventh Circuit's opinion makes clear that the court did not recognize a claim against Dr. Carter which related back to the original complaint under Rule 15(c)(1)(C). In fact, the Seventh Circuit did not discuss Dr. Carter at all, but rather correctly noted that plaintiff had made a claim against "the medical director in his official capacity" and found that such a claim was timely with respect to the first amended complaint. *Stewart*, 559 F. App'x. at 549. Thus, this court was incorrect in its belief that it was bound by the law of the case to find timely the claims against Dr. Carter and, by analogy, Dr. Wahl.

Viewed in their proper context, the claims against Dr. Wahl in her individual capacity appear to be untimely and do not relate back under Rule 15(c)(1)(C).

4. John Does Two through Fifteen.

The claims against John Does Two through Fifteen are somewhat more difficult to analyze, in part due to the vague nature of the allegations against them. Plaintiff refers to fourteen correctional officers, jointly alleged to have been involved in the various Black Box incidents between 2008 and 2012. Unlike with the original complaint, which named seven John Does

11

allegedly responsible for seven respective incidents between December of 2008 and May of 2012, it is impossible to determine in the third amended complaint which of the officers are alleged to have been involved in which incidents.

What is clear, however, is that the seven original John Does in the original complaint appear to be among the group of fourteen John Does named in the third amended complaint. *See* [132] at ¶¶ 15-16, 24, 26, 30, 43 (referring to the seven Black Box incident dates referenced in the original complaint and alleging that "one of John Does Two through Fifteen" was involved during each incident). The claims against these defendants were dismissed with prejudice. *See* [6] at 2 (finding that the allegations against the John Doe officers failed to state a claim and dismissing the original complaint "without prejudice to plaintiff submitting an amended complaint that names a proper party who may be liable for the claims he alleges against Dr. Mesrobian[,]" not the John Doe officers). This court's dismissal was upheld by the Seventh Circuit on appeal. *See Stewart*, 559 F. App'x. at 549 ("The district court also properly dismissed Stewart's claim against the unnamed guards. His allegations do not plausibly suggest that they were deliberately indifferent to his complaints of severe pain. Indeed, his allegations suggest the opposite, for he says that the guards responded to his complaints by looking in his file for an exemption and then following up to see whether Dr. Mesrobian would issue one.") (internal citations omitted). Thus, the Seventh Circuit's ruling regarding the John Does involved in the original complaint is now the law of the case. *See Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir. 1997) ("The law of the case doctrine generally binds a court to its own previous decision on issues arising earlier in the litigation as well as to decisions entered by a higher court earlier in the litigation.").

The Seventh Circuit has held that the law of the case doctrine, although "not 'hard and fast,'" should not be ignored unless there are "unusual circumstances that justify abandonment of the law of the case includ[ing] (1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 685 (7th Cir. 2014). In this case, this court and the Seventh Circuit have dismissed and upheld, respectively, the claims against the John Doe officers involved in the December, 2008, January 27, 2009, March 3, 2009, March 31, 2009, April 22, 2009, May 5, 2009, and May 29, 2012 Black Box incidents. Thus, it would appear that the claims against those John Does should be dismissed.[6]

With regard to the remaining John Does, the claims against them appear to be directed at those Black Box incidents not alleged in the original complaint. Most of those incidents occurred prior to Dr. Carter issuing the no Black Box permit on August 28, 2010, making the claims regarding them untimely when John Does Two through Fifteen were named in the November 3, 2014 second amended complaint. The claims regarding these officers could not relate back to the

---

[6]If plaintiff believes that substantial new evidence, a change in law, or a clearly erroneous filing justifies reinstatement of any of those defendants, the proper course of action would be to file a motion seeking leave to reinstate rather than simply reinstating them on his own initiative in an amended pleading.

12

original complaint under Rule 15(c)(1)(C) because the relevant Black Box incidents they were involved in were not alleged in the original complaint. Moreover, the only parties they could be substituted for were dismissed with prejudice. And finally, there is no reason to believe that this court's and the Seventh Circuit's analysis would be any different with regard to those incidents because the allegations against them are substantially identical to those against the dismissed John Does in the original complaint. Thus, it appears that plaintiff's claims with regard to the remaining John Does Two through Fifteen should be dismissed as well.

For the reasons above, it appears that the third amended complaint fails to state a claim against Dr. Jill Wahl, Dr. Imhotep Carter, and John Does Two through Fifteen. Nevertheless, the court is of the opinion that plaintiff should have the opportunity to respond, particularly in light of the complex procedural history of this case, the limited discovery already conducted (including the apparent 2012 grievance which is not yet before the court) which may shed further light on these issues, and the fact that the parties are already in the process of briefing whether plaintiff's claims against Dr. Funk are timely, which the court will consider when that matter has been fully argued. If plaintiff believes the claims against these parties should not be dismissed, he is ordered to file a response by July 27, 2015. Failure to do so will result in summary dismissal of those claims pursuant to 28 U.S.C. § 1915(e)(2). In the event plaintiff files a response, Dr. Wahl and Dr. Carter are given leave to file a reply by August 26, 2015.

Date: 5/22/2015                                         ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)