# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| LAVERTIS STEWART (A-15380) , | ) | |
| | ) | |
| Plaintiff, | ) | 12 C 50273 |
| | ) | |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| EVANSTON INSURANCE COMPANY as | ) | |
| Special Representative for the Estate of | ) | |
| ANTREAS MESROBIAN; JILL WAHL; | ) | |
| IMHOTEP CARTER; WEXFORD HEALTH | ) | |
| SOURCES, INC.; ARTHUR FUNK; JOHN | ) | |
| DOE TWO; JOHN DOE THREE; JOHN DOE | ) | |
| FOUR; JOHN DOE FIVE; JOHN DOE SIX; | ) | |
| JOHN DOE SEVEN; JOHN DOE EIGHT; | ) | |
| JOHN DOE NINE; JOHN DOE TEN; JOHN | ) | |
| DOE ELEVEN; JOHN DOE TWELVE; JOHN | ) | |
| DOE THIRTEEN; JOHN DOE FOURTEEN; | ) | |
| and JOHN DOE FIFTEEN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

For the reasons set forth below, the court on its own motion (*see* [154]) dismisses defendants Dr. Jill Wahl, Dr. Imhotep Carter, and John Does Three through Fifteen, pursuant to 28 U.S.C. § 1915(e)(2). Defendant Dr. Arthur Funk's motion to dismiss [148] is denied. Dr. Funk is to inform the court by November 2, 2015 if he will be requesting a *Pavey* hearing on the exhaustion issue. Defendant Evanston Insurance Company's motion for judgment on the pleadings [168] is granted and Evanston is dismissed from the case. Pursuant to 735 ILCS 5/13-209(c), plaintiff may name Dr. Mesrobian's personal representative if plaintiff proceeds with reasonable diligence to have letters of office issued and a personal representative named prior to July 9, 2016. Due to the length of the case and the anticipated extensive discovery still remaining, the parties should be prepared to discuss the possibility of a settlement conference at the next status conference with Magistrate Judge Johnston.

## STATEMENT - OPINION

This matter arises out of plaintiff Lavertis Stewart's complaints alleging wrongdoing by Wexford, Inc., several of its physician employees, and several IDOC officers at Dixon Correctional Center, all related to the use of Black Box restraints which plaintiff alleges caused him ongoing pain

and injury. Currently before the court are several motions for relief and the court's own order to show cause why certain defendants should not be dismissed. The procedural history of those matters that the court has taken under advisement is set forth below.

On May 18, 2015, defendant Dr. Arthur Funk filed a motion to dismiss for failure to state a claim on the grounds that the claims against him are untimely. *See* [148]. On July 28, 2015, plaintiff filed his response in opposition to the motion. *See* [177]. On August 26, 2015, Dr. Funk filed his reply. *See* [180].

On May 22, 2015, this court ordered plaintiff to show cause why the claims against defendants Dr. Jill Wahl, Dr. Imhotep Carter, and John Does Two through Fifteen should not be dismissed pursuant to the court's screening authority under 28 U.S.C. § 1915(e)(2). *See* [154]. On July 27, 2015, plaintiff responded to the court's order. *See* [173]. On August 26, 2015, defendants Dr. Carter and Dr. Wahl filed a reply. *See* [179].

On July 7, 2015, defendant Evanston Insurance Company as special representative for Dr. Mesrobian filed a motion for judgment on the pleadings on the grounds that the court did not have authority to appoint it as special representative under Illinois law. *See* [168]. On September 8, 2015, plaintiff filed a response in opposition to the motion. *See* [182]. On September 23, 2015, Evanston filed a reply. *See* [185].

On September 1, 2015, the court requested supplemental briefing with regard to plaintiff's most recent grievance related to his allegations of wrongdoing. *See* [181]. On September 23, 2015, Dr. Funk filed a supplemental brief [183], as did plaintiff [184]. Importantly, in Dr. Funk's supplemental brief he claims that plaintiff's claims against Dr. Funk must be dismissed because plaintiff has failed to fully exhaust his administrative remedies with regard to the claims against Dr. Funk. *See* [183]. Plaintiff, in turn, contends that he has fully exhausted his administrative remedies. The foregoing matters are now ripe for the court's review.

The court will set forth the relevant factual background and procedural history before analyzing the present motions. Much of the facts set forth below are substantially similar to those set forth in the court's order to show cause [154], including additional information that has come into focus during the course of the parties' briefing.

## A. FACTUAL BACKGROUND & PROCEDURAL HISTORY

1. Original Complaint – Filed July 19, 2012.

On July 19, 2012, plaintiff filed his original complaint, alleging a deliberate indifference claim against Dr. Mesrobian, former medical director of Dixon Correction Center, in his individual and official capacity, as well as seven John Doe "correctional officers." [1] at 2, 10 (naming six John Does in the caption but referring to a "#7 c/o" within the body of the complaint). The complaint is signed July 14, 2012. [1] at 14. Plaintiff alleged that he suffered from carpal tunnel and bursitis/arthritis, which was aggravated and worsened when the John Doe correctional officers

forced him to wear "Black Box" restraints[1] on his wrists when he was sent from Dixon Correctional Center to the University of Illinois Chicago ("UIC") for medical treatment. He alleged that after being forced to wear the Black Box during UIC visits in December of 2008 by John Doe One, January 27, 2009 by John Doe Two, and March 3, 2009 by John Doe Three, he complained to Dr. Mesrobian on March 4, 2009, at which time Dr. Mesrobian agreed to inform the officers not to use the restraints. Nevertheless, plaintiff was again forced to wear the Black Box during subsequent UIC visits on March 31, 2009 by John Doe Four, and April 22, 2009 by John Doe Five. During the April 22, 2009 visit, plaintiff informed John Doe Five that Dr. Mesrobian had agreed to order that the Black Box no longer be used. John Doe Five looked through plaintiff's "medical writ package" for the UIC visit and found no order. John Doe Five then contacted the nursing station and was informed that Dr. Mesrobian would not issue such an order. As plaintiff did not have a medical order exempting him, John Doe Five made him choose whether to wear the Black Box or refuse the UIC visit. Because plaintiff believed his condition was life threatening, he agreed to wear the Black Box despite the pain.

Plaintiff further alleged that despite suffering outward manifestations of injury and meeting with Dr. Mesrobian on April 24, 2009 to again request a "no Black Box" order, plaintiff was forced to wear the Black Box by John Doe Six while on a UIC visit on May 5, 2009, during which John Doe Six informed plaintiff that Dr. Mesrobian had not issued an order. Plaintiff once again requested an exemption order from Dr. Mesrobian on May 8, 2009, but despite admitting that the Black Box was "very painful," Dr. Mesrobian refused to grant plaintiff's request. [1] at 7-8.

Following Dr. Mesrobian's last refusal, plaintiff filed a grievance on June 4, 2009. Plaintiff alleged that "said grievance was not resolved until July 22, 2010, after Dr. Mesrobian was no longer employed at Dixon Correctional Center[.]" [1] at 9. He further alleged that on July 22nd, the grievance was forwarded to the Chief of Health Services for review and final recommendation, who in turn forwarded the grievance to "Dr. Mesrobian's replacement Dr. [Imhotop] Carter," who reviewed plaintiff's request and granted him a six-month "no Black Box" permit. *Id.* Despite the temporary relief afforded by Dr. Carter's permit, plaintiff alleged that "[t]his too has proven to be problematic because now Dr. Carter is no longer employed at Dixon Correctional Center, and the 'No Black Box' permits prescribed by him has expired. Plaintiff informed the new Doctor of his condition and the need for the 'No Black Box' permit, but on or about May 29, 2012 plaintiff was once again given an ultimatum" by John Doe Seven, after searching plaintiff's writ package and finding no permit, to wear the Black Box or refuse his UIC medical appointment. [1] at 9.

Of note, despite being filed *pro se*, plaintiff's original complaint set forth the specific actions and respective dates he contended were violative of his civil rights. Plaintiff did not name Dr. Carter as a defendant, despite explicitly referring to him as the Medical Director who ultimately replaced Dr. Mesrobian, and he did not allege any action by Dr. Carter that would constitute deliberate indifference as to the Black Box restraints. Indeed, the only action regarding the Black Box that Dr. Carter is alleged to have taken was to grant plaintiff a six-month permit. Plaintiff also did not specifically allege that he was forced to wear the Black Box during any visits between May 5, 2009

---

[1]Black Box restraints are security restraints that cover handcuff locks. The box forms a rigid link between an individual's wrists.

and May 29, 2012. While he did refer to a "new Doctor" who apparently refused to grant him a new permit at the time of the May 29, 2012 incident, this individual was not named as one of the John Doe defendants, who plaintiff explicitly referred to throughout the complaint as various corrections officers.

Along with his complaint, plaintiff filed a motion for appointment of counsel, noting that he had been writing and attempting to call numerous lawyers without success. *See* [4]. On July 24, 2012, he filed a motion for leave to proceed *in forma pauperis*. *See* [5].

On August 8, 2012, the court granted plaintiff's IFP motion but dismissed the claims against the John Doe correctional officers. *See* [6]. The court noted that, according to the allegations in the complaint, the officers responded to plaintiff's complaints by checking whether he was medically exempt from wearing the Black Box. The officers only forced plaintiff to choose whether to wear the Black Box or refuse medical treatment after verifying with his medical providers that an exception for the Black Box restraints would not be authorized. Because the officers were only following proper procedures and deferring to prison health physicians, they could not be said to be deliberately indifferent.

The court noted that the claims against Dr. Mesrobian stated a claim, but dismissed the claims without prejudice because Dr. Mesrobian was deceased at the time of filing. The court held "[a]ccordingly, the current complaint is dismissed without prejudice to plaintiff submitting an amended complaint that names a proper party who may be liable for the claims he alleges against Dr. Mesrobian (such as his estate, if one was opened and is still open)." [6]. The court afforded plaintiff 45 days to name a suable entity for Dr. Mesrobian, or until September 22, 2012. Finally, the court denied plaintiff's request for counsel without prejudice, finding that "[t]he case at the present time is not overly complex, and plaintiff's current pleadings indicate that he may proceed *pro se* with his case at this time." *Id.*

On September 19, 2012, plaintiff filed a "Motion for Extension of Time" requesting an additional 45 days to substitute a party for Dr. Mesrobian. *See* [7]. In the motion, plaintiff explained that he "did not know Dr. Mesrobian was deceased until this Honorable Court made him aware of it in the Court's Order of 8-8-12." [7] at 1. Plaintiff noted that he had attempted to make the necessary investigation into whether Dr. Mesrobian had opened an estate through FOIA requests, but the information had not been returned to him. Plaintiff also explained that he was not fully aware of "who to substitute for Dr. Mesrobian, or if there is an estate, not having the requested info from the FOIA liason, and not being appointed an attorney has put Plaintiff at a disadvantage and difficult for him to proceed and meet the Court's dead line to amend the complaint." *Id.* Further, "[p]laintiff realizing his situation was daunting, wrote [an attorney] in Chicago on 9-12, 2012, requesting his representation and inquiring if someone in his firm would mind if Plaintiff suggested to this Honorable Court that they be appointed by the court as Special Administrator to Dr. Mesrobian's possible estate." *Id.* In response, this court granted the motion to extend and ordered that plaintiff file an amended complaint by November 16, 2012. *See* [9].

2. First Amended Complaint – Filed November 16, 2012.

Plaintiff filed his first amended complaint on November 16, 2012, omitting the John Doe defendants, naming as a defendant the "special administrator" for Dr. Mesrobian's estate (and asking the court to appoint one), and adding "Dr. Imhotop Carter (in his official capacity only)," as well as the director of the IDOC. The first amended complaint is signed November 13, 2012. [13] at 12. While plaintiff's first amended complaint was substantially similar to the original, plaintiff clarified that he was challenging what he believed to be the IDOC's official policy "of contouring inmates into the Black Box Restraint [which] serve[s] only one purpose, 'TORTURE[.]'" [13] at 11. In addition, despite explicitly naming Dr. Carter "in his official capacity only," the first amended complaint also added one sentence of allegations against him: "Dr. Carter was also deliberately indifferent to plaintiff's serious medical needs by requiring him to go out in Black Box's on 1-28-10; 3-9-10; and 5-14-10 before finally issuing a 6-month 'NO BLACK BOX' restraint order at [the Chief of Health Service's] inquiry finalized on 8-28-10." [13] at 10. Finally, the first amended complaint attached a FOIA request to Dixon Correctional Center requesting the names of correctional officers who transported him to UIC on the following dates: "1-27-09; 3-3-09; 3-31-09; 4-22-09; 5-5-09; 6-6-09; 7-30-09; 9-1-09; 10-22-09; 12-8-09; 1-28-09; 3-9-10; 4-29-10; 5-14-10." [13] at 14.

Simultaneously with the first amended complaint, plaintiff filed a "Motion to Spread Death of Record Leave to Appoint a Special Administrator and to Reconsider Motion for Appointment of Counsel." [12]. In the motion, plaintiff requested that "this Honorable court to grant leave to appoint a special administrator over the Estate of Dr. Mesrobian and leave to name said administrator as #1 defendant, pursuant to 735 ILCS 5/13-209(c)." [12] at 1. Plaintiff also noted that his FOIA requests for information regarding Dr. Mesrobian's possible estate had been denied, and requested that the court reconsider its denial of his motion to appoint counsel "due to the fact that his case has become very complex with respect to the recent discovery of Dr. Mesrobian's untimely death and plaintiff's inability to investigate whether an estate exists, or whether there has been an issuance of letters of office, and whether the estate is protected by liability insurance." [12] at 1-2.

On February 4, 2013, this court summarily dismissed the first amended complaint in its entirety with prejudice. *See* [17]. The court noted that plaintiff requested "the court . . . appoint a special administrator for Dr. Mesrobian's estate" and had substituted Dr. Mesrobian with "a not-yet-named special administrator as defendant." [17] at 2. The court nonetheless dismissed the claims against Dr. Mesrobian as having been untimely since the filing of the original complaint. The court also dismissed the claims against Dr. Carter as both untimely and also impermissibly-joined distinct and unrelated claims against a different party. Finally, the court dismissed the claims against the IDOC as failing to state a claim because the Seventh Circuit had previously found the use of Black Boxes to be constitutional.

Of note, following the court's summary dismissal, plaintiff filed a timely 59(e) motion to reconsider [20, 23]. Within the motion, plaintiff explained that he only named Dr. Carter in his official capacity because this court had dismissed both his individual and official capacity claims against Dr. Mesrobian, and while naming Dr. Mesrobian's estate satisfied the individual capacity

claim, naming Dr. Carter was necessary to substitute the official capacity claim:

> With respect to Dr. Carter, plaintiff named him as a defendant in his official capacity only (see Am. Compl. at Page 2), due to this Court's August 8, 2012 Statement which indicated that Dr. Mesrobian is deceased; and "Plaintiff must therefore name a party that can be substituted for Dr. Mesrobian." See Page 2 of the 8/8/12 Statement. Also note that "a suit against a[n] *** official in his or her official capacity is not a suit against the official but rather is a suit against the office." Therefore, although plaintiff named Dr. Carter in his amended complaint, said claim should not be considered a new claim, or unrelated to the claims against Dr. Mesrobian because he was following the same policy that caused Dr. Mesrobian to be reluctant to issue a "No Black Box Permit" . . . . Dr. Carter is only named in the amended complaint to maintain this suit against the Dixon Correctional Center Medical Director Office, because the medical director's office was always included in this suit by way of Dr. Mesrobian in both his official and unofficial capacity.

*See* [23] at 3 (internal citations to caselaw omitted). The court denied plaintiff's 59(e) motion to reconsider its previous order and judgment. [25].

3. Plaintiff's Appeal to the Seventh Circuit.

Plaintiff filed a timely notice of appeal on March 25, 2013 [27]. Because no defendants had been served, the only briefing before the Seventh Circuit was defendant's appellate brief. *See Stewart v. Special Adm'r of Estate of Mesrobian*, App. Case No. 13-1628, Doc. # 22 (7th Cir. 2013).

In his brief, plaintiff again noted that his intent in naming Dr. Carter in his official capacity was to "nam[e] a successor in office in place of a deceased defendant[.]" *Id.* at 3. He explained that he "substituted Dr. Mesrobian with Dr. Imhotep Carter (in his official capacity only) who had succeeded Dr. Mesrobian as medical director at Dixon C.C." *Id.* at 5. Plaintiff did not indicate any intent to sue Dr. Mesrobian's replacements in their individual capacities, despite being aware that he was placed in the Black Box during Dr. Wahl's and Dr. Carter's respective tenures as medical directors. As he explained with regard to his original complaint:

> Although plaintiff did not feel the need to mention each date he was placed in the black box restraint after filing his grievance (due to the fact that the grievance tolled the time for filing this claim while it was pending). Nevertheless, while said grievance was pending plaintiff was placed in the BLACK BOX RESTRAINTS no less than four (4) additional times under Dr. Mesrobian's tenure (6/6/09, 7/30/09, 9/12/09, and 10/22/09); One (1) time under Dr. Whals [sic] tenure (12/8/09); and no less than three (3) times under Dr. Carter's tenure (1/28/10, 3/9/10, and 5/14/10).

*Id.* at 6. And again, with regard to his first amended complaint:

Dr. Carter was only named in his official capacity as a substitute for Dr. Mesrobian's official capacity.

. . . .

Although plaintiff added the last three tortious acts (of being placed in the black box restraints) to his amended complaint, it was not his intent for the District Court to consider said acts as additional claims against newly included defendant Dr. Carter. Plaintiff contends that all of the tortious acts committed against him are against Dr. Carter in his official capacity (or against the "Medical Director's Office"), and he intends for all of the tortious acts committed against him to be claims against the Estate of Dr. Mesrobian (in Dr. Mesrobian's individual capacity).

*Id.* at 7. Moreover, he argued that this court had erred by failing to automatically substitute Dr. Carter in his official capacity for Dr. Mesrobian in his official capacity pursuant to Federal Rule of Civil Procedure 25(a), due to this court's erroneous belief that the claims against Dr. Carter were new and distinct claims:

. . . Dr. Mesrobian's successor (Dr. Carter) should have been automatically substituted as a party by the District Court . . . . [T]he parties are not different with respect to the Medical Director's Office.
WHEREFORE, Dr. Carter was properly added to plaintiff's suit in his official capacity, and he is not a different party with respect to his office.

*Id.* at 9.

Plaintiff also asked the Seventh Circuit to reverse this court's dismissal of the director of the IDOC, and "if it is determined that it is not the policy of IDOC to use the black box restraints" in the manner that they had been used on him, to reverse this court's dismissal of the John Doe officers, because the officers "knew or should have known that a substantial risk of serious harm existed due to the fact that plaintiff informed them of his condition." *Id.* at 11. Plaintiff's arguments with respect to Dr. Mesrobian's estate were largely restricted to the timeliness of his claims, but he also noted without further argument that:

In order to preserve the suit against Dr. Mesrobian in his individual capacity plaintiff filed a motion to the District Court TO SPREAD DEATH OF RECORD, and LEAVE TO APPOINT A SPECIAL ADMINISTRATOR in order to bring this suit against the Estate of Dr. Mesrobian. However the District Court dismissed the complaint without addressing the above stated motion.

*Id.* at 7.

On April 14, 2014, the Seventh Circuit issued its opinion and mandate affirming in part, vacating in part, and remanding the case to the district court. *See Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x. 543 (7th Cir. 2014); [50]. The Seventh Circuit affirmed this court's dismissal of the John Doe correctional officers, finding that plaintiff's "allegations do not plausibly suggest that they were deliberately indifferent to his complaints of severe pain. Indeed, his

allegations suggest the opposite, for he says that the guards responded to his complaints by looking in his file for an exemption and then following up to see whether Dr. Mesrobian would issue one." *Stewart*, 559 F. App'x. at 549. The Seventh Circuit also affirmed this court's dismissal of the IDOC and its director, finding that plaintiff's complaint "says too little" to properly allege a departmental policy to "torture" inmates. *Id.*

However, the Seventh Circuit found that this court had improperly dismissed the individual capacity claims against Dr. Mesrobian's estate, as well as the official capacity claims against Dr. Carter. First, the court noted that plaintiff had alleged an ongoing violation of his civil rights, which occurred every time he was forced to wear the Black Box. With regard to Dr. Mesrobian, the panel noted that he left his position in October of 2009 and thus plaintiff's claims against him accrued on October 22, 2009, the last time (according to the first amended complaint) that plaintiff was forced to wear the Black Box during his tenure. *See id.* at 547. However, plaintiff had already filed a grievance in June of 2009 with regard to the Black Box restraints, which tolled his claim until grievance procedures were completed. The statute of limitations did not begin to run until August 28, 2010, when plaintiff's grievance was resolved and Dr. Carter issued the six-month permit.

The Seventh Circuit thus found that plaintiff's original July, 2012 complaint was timely as to the claims against Dr. Mesrobian. And although the November, 2012 first amended complaint was untimely with respect to Dr. Mesrobian's estate, the court found that plaintiff had satisfied the relation back requirement of Federal Rule of Civil Procedure 15(c)(1)(C), which states that an amendment "chang[ing] the party or the naming of the party against whom a claim is asserted" relates back if the claim against the party arose out of the same transaction alleged in the original pleading and if, within the Rule 4(m) period, the party to be amended in received notice such that it would not be prejudiced and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *Id.*

In analyzing Rule 15(c)(1)(C), the Seventh Circuit primarily focused on whether the requirement that "within the Rule 4(m) period, the party to be amended in received notice" could be satisfied given that this court had dismissed plaintiff's action at the screening stage and thus actual notice (in the form of service of process) had never been sent to any defendants. The Seventh Circuit found that the absence of service would not be held against plaintiff because it was entirely attributable to screening delays outside his control. The court did not explicitly analyze the other requirements of Rule 15(c)(1)(C), namely whether the claims arose out of the same transaction or whether there had been a mistake concerning the proper party's identity, which is unsurprising due to the fact that those requirements were clearly satisfied. It was obvious that plaintiff substituted the special administrator of the estate for Dr. Mesrobian because this court instructed him to correct his mistake in naming the deceased Dr. Mesrobian rather than a proper suable entity, such as the estate. Likewise, the claims against the estate in the first amended complaint obviously arose out of the same transaction as the claims against Dr. Mesrobian in the original complaint because the estate was chosen as the entity potentially liable for his actions alleged in the complaint.

Despite finding that the claims against Dr. Mesrobian's estate related back, the Seventh Circuit noted that "[t]his does not mean that [plaintiff] has cleared all procedural hurdles relating to Dr. Mesrobian's estate." *Id.* at 548. The court noted that under Illinois law, a "special

administrator" cannot be appointed if an estate has been opened. The court also noted that under Illinois law, a suit against the estate would be barred unless it was covered by liability insurance. Finally, the court acknowledged that it did not have information regarding all of the underlying facts necessary to analyze and decide the issue:

> We don't know whether an Illinois court has opened an estate for Dr. Mesrobian, or whether his estate is covered by liability insurance. In fact, we don't even know that the estate would have been probated in Illinois, for it appears that Dr. Mesrobian died in California. Under California law if Dr. Mesrobian's estate is covered by insurance, [plaintiff] could proceed directly against the insurer without naming any estate representative. The district court didn't address [plaintiff's] renewed motion for counsel given its ruling on the statute of limitations, but it will need to take up that motion on remand in light of these issues.

*Id.* at 548-49 (internal citations omitted).

With regard to Dr. Carter, the Seventh Circuit explicitly noted that plaintiff "named Dr. Carter in his official capacity (although by that time Dr. Carter had been replaced as medical director)[.]" *Stewart*, 559 F. App'x. at 546. When later analyzing that claim, the court did not even mention Dr. Carter but rather discussed the claim as "against the medical director in his official capacity." *Id.* at 549. Because the official capacity claims were not against Dr. Carter himself, the court made no attempt to identify which dates plaintiff wore the Black Box during his tenure to determine whether the claims were timely, as it had done with Dr. Mesrobian. Instead, the Seventh Circuit found that the official capacity claims were timely in November of 2012 because plaintiff alleged a continuing violation regarding the Black Box, which according to the first amended complaint was ongoing as recently as May of 2012 (notably *after* the first amended complaint alleged that Dr. Carter had left as medical director). *Id.* Thus, there was no need to conduct a Rule 15(c)(1)(C) analysis with regard to the official capacity claims, because the statute of limitations had been running for less than a year as to the entity subject to those claims.[2]

Because plaintiff's first amended complaint was not untimely with regard to the claims against Dr. Mesrobian's estate and the official capacity claim against "the office of the medical director," the Seventh Circuit vacated this court's dismissal of the action and remanded for further proceedings. *See* [49, 50].

4. The Second Amended Complaint – Filed November 3, 2014.

Following the Seventh Circuit's remand, this court ordered that plaintiff's first amended complaint was reinstated with respect to the official capacity claim against "the medical director of Dixon Correctional Center" and the individual claim against Dr. Mesrobian's estate, and appointed counsel. [54]. Magistrate Judge Johnston granted plaintiff leave to file a second amended

---

[2]Although plaintiff later identified this entity as Wexford Health Sources, Inc., in the original complaint he believed it to be Dixon Correctional Center itself, *see* [1] at 2, and in the first amended complaint he mistakenly named it as "Wexford Correctional Medical Services." *See* [13] at 2.

complaint, "subject to Federal Rule of Civil Procedure 15" [60], and extended the Rule 4(m) period to October 15, 2014 to serve the existing first amended complaint. [77].

Plaintiff filed a motion to reconsider this last order, requesting an additional extension of the Rule 4(m) period so that he could file his second amended complaint and serve that, rather than the first amended complaint, on Dr. Carter and additional defendants to be added. *See* [78]. In response, Judge Johnston ordered plaintiff to file his amended complaint by November 3, 2014 and extended the Rule 4(m) period to November 24, 2014. [80].

Plaintiff filed his second amended complaint through counsel on November 3, 2014. [83]. The second amended complaint continued to name Dr. Mesrobian's estate, but all other parties were changed. Plaintiff replaced the official capacity claims against Dr. Carter with claims against Wexford Health Sources, Inc., the entity that the Dixon medical directors acted for as agents. For the first time, plaintiff named Dr. Carter in his individual capacity. Plaintiff also named Dr. Jill Wahl, acting medical director for Dixon between Dr. Mesrobian and Dr. Carter, in her individual capacity. Finally, plaintiff added fifteen John Doe defendants in their individual capacities. Plaintiff alleged that John Doe One "served as a licensed medical doctor and Medical Director at Dixon during May 2012." [83] at ¶ 8. John Does Two through Fifteen allegedly "served as correctional officers at Dixon" during the relevant incidents. [83] at ¶ 11.

The second amended complaint largely echoed the allegations made against Dr. Mesrobian in the original and first amended complaint, with one significant difference. While the original and first amended complaints alleged that the April 22, 2009 incident was the first time plaintiff told the John Doe officers about his conversations with Dr. Mesrobian, the second amended complaint alleged that plaintiff referred to those conversations during the March 31, 2009 incident. The second amended complaint alleges that the officers checked with Dr. Mesrobian's office during the March 31st incident and were told that Dr. Mesrobian refused to issue a no Black Box order. Thus, the March 31st incident was also the first time plaintiff was offered the ultimatum whether to wear the Black Box or forgo treatment. According to the second amended complaint, plaintiff again complained and officers again verified that Dr. Mesrobian refused to issue an order during the April 22, 2009 incident. All other allegations with regard to the Black Box incidents and the John Does officers alleged in the original complaint are substantially identical.

With regard to Dr. Wahl, plaintiff alleged that he was forced to wear the Black Box on December 8, 2009, during Dr. Wahl's tenure as acting medical director and while plaintiff's grievance was still pending. [83] at ¶ 36. With regard to Dr. Carter, plaintiff alleged that he was forced to wear the Black Box on January 28, 2010, March 9, 2010, April 29, 2010, and May 14, 2010, during Dr. Carter's tenure as medical director prior to him issuing the no Black Box permit on August 28, 2010. [83] at ¶ 39. With regard to John Doe One, plaintiff alleged that the no Black Box permit, despite being renewed during Dr. Carter's tenure, "eventually expired in early 2012, after Dr. Carter was no longer the Medical Director at Dixon. John Doe One replaced Dr. Carter as the Medical Director at Dixon." [83] at ¶ 42. Plaintiff alleged that he was forced to wear the Black Box again on May 29, 2012, after the permit expired and during John Doe One's tenure. Finally, plaintiff alleged that John Does Two through Fifteen were the correctional officers who forced him to wear the Black Box during these incidents.

In response, Dr. Carter answered the second amended complaint [90], but defendants Dr. Wahl and Wexford filed a motion to dismiss on the grounds that the claims against them were untimely [92]. This court denied the motion to dismiss on February 18, 2015. [123]. The court found that the claims against Wexford related back to the official capacity claims against Dr. Mesrobian in the original complaint because they arose out of the same conduct, Wexford was served with summons within the Rule 4(m) period, and Wexford should have known it could have been named in the original complaint but for plaintiff's mistake in believing that Dixon Correctional Center, not Wexford, was Dr. Mesrobian's employer.

The court also found that the claims against Dr. Wahl related back to the original complaint because plaintiff was mistaken regarding her role as medical director during some of the time period in which he was forced to wear the Black Box. Crucial to the court's holding was its incorrect belief that "the Seventh Circuit expressly held that plaintiff's claim against Dr. Carter was timely despite the fact that the limitations period had expired before plaintiff filed his first amended complaint in November 2012," [123] at 7, which would necessarily bind this court to find the individual capacity claims against Dr. Carter (and by logical extension, Dr. Wahl) timely due to the law of the case. The court found further support for its decision based on the doctrine of equitable tolling, which the court will address further below.

5. The Third Amended Complaint – Filed April 17, 2015.

On March 6, 2015, plaintiff moved for leave to file a third amended complaint to substitute Dr. Arthur Funk for John Doe One, attaching the proposed third amended complaint to the motion. [124]. Notably, in the course of briefing that motion, plaintiff attached a grievance he filed on July 28, 2012 regarding the May 29, 2012 Black Box incident. *See* [130-3]. On April 17, 2015, Judge Johnston granted the motion [133] and plaintiff filed the third amended complaint [132].

The filed third amended complaint is substantially similar to the second amended complaint, with several differences. Most notably, Dr. Arthur Funk is substituted for John Doe One. Evanston Insurance Company as Special Representative for the Estate of Antreas Mesrobian is also substituted for Dr. Mesrobian's estate. In addition, the third amended complaint adds additional allegations against *one* of John Does Two through Fifteen with regard to the May 29, 2012 incident, alleging that "[o]n this occasion, the Black Box was not working properly. One of John Does Two through Fifteen proceeded to beat the Black Box onto Mr. Stewart's wrists to overcome the malfunction of the Black Box." [132] at ¶ 43.

6. Supplemental Briefing Regarding the July 28, 2012 Grievance.

As noted, in the course of briefing his motion for leave to file a third amended complaint, plaintiff attached a grievance he filed on July 28, 2012, the first indication of such in the record. *See* [130-3]. The court noted the apparent existence of the grievance in its order to show cause, *see* [154] at 8 n.3, and when the parties did not address the grievance in the course of briefing the various motions, the court ordered supplemental briefing on the issue [181].

The parties' supplemental briefing and exhibits reveal that plaintiff filed a grievance on July 28, 2012 regarding the May 29, 2012 Black Box incident. In the grievance, plaintiff complains about the fact that there was no order in the writ package not to use the Black Box, as there should have been, as well as the fact that one of the correctional officers "beat on" the Black Box to get it to work, causing him pain and injury. Notably, despite the fact that plaintiff has repeatedly stated he does not know the identity of the officer who allegedly beat the Black Box onto his hands on May 29th, in his grievance he identifies this individual as "c/o Currins." [183-1] at 8. The exhibits also show that plaintiff received an initial denial of his grievance from Warden (and Chief Administrative Officer) Chandler on October 17, 2012. [183-1] at 10. The denial indicates that plaintiff had right to appeal to the Administrative Review Board ("ARB") within 30 days. *Id.* According to an attached affidavit from ARB Chairperson Sarah L. Johnson, the ARB received plaintiff's appeal on November 17, 2012 and denied it as untimely on December 11, 2012. [183-1] at 5, 13. According to plaintiff's briefing and his attached Dixon Correctional Center Trust Fund Account, he placed the appeal to the ARB in the prison mailing system on November 15, 2012, twenty-nine days after the denial of his grievance. *See* [184] at 6-7; [184-1] at 3.

## B. ANALYSIS

With respect to plaintiff's claims against the various defendants, the court will begin by analyzing the timeliness of the claims against Dr. Carter, Dr. Wahl, and Dr. Funk, addressed in the court's show cause order and Dr. Funk's motion to dismiss, respectively. Next, the court will analyze the claims regarding the John Doe correctional officers. Finally, the court will analyze Evanston's motion for judgment on the pleadings.

Prior to analyzing the claims against the individual defendants, however, the court will address two preliminary issues common to several claims. First, whether and to what degree equitable tolling should apply to the claims against some or all of the defendants. Second, whether plaintiff has fully exhausted his administrative remedies.

1. Equitable Tolling.

As plaintiff points out in his response to this court's order to show cause, the court has previously found that equitable tolling is appropriate with respect to certain of his claims. In denying Dr. Wahl's motion to dismiss, the court applied the doctrine of equitable tolling and found that "[p]laintiff's complaint should have been tolled when he delivered his first amended complaint to the prison mailroom in November 2012" and the tolling should have ended "when plaintiff's second amended complaint was due on November 3, 2014[.]" [123] at 7-8. As an initial matter, the court was applying the doctrine of equitable tolling to the 120-day Rule 4(m) period for service, which had not yet expired when plaintiff filed the first amended complaint, rather than the statute of limitations for filing the complaint. *See id.* However, the court did rely on *Bryant v. City of Chicago*, 746 F.3d 239 (2014), where the Seventh Circuit found that equitable tolling for the statute of limitations can be appropriate where "plaintiffs awaited a response that was necessary for them to proceed with their claims (i.e., a response to their motions to appoint counsel or proceed in forma pauperis)[.]" *Id.* at 243. In so relying, this court found that "the time plaintiff had to wait for his appeal to be completed should not be counted against him." [123] at 8.

Applying this reasoning to the statute of limitations for filing (rather than the Rule 4(m) period), the court finds that it is appropriate to equitably toll plaintiff's claims against all parties for the 25-day period between July 14, 2012, when he signed and mailed his original complaint and his motion for appointment of counsel, and August 8, 2012, when this court dismissed the original complaint and denied plaintiff's motion for appointment of counsel. *See Bryant*, 746 F.3d at 243 (equitable tolling appropriate where plaintiff is awaiting "a response to their motion[] to appoint counsel").

The court also finds it appropriate to equitably toll the claims against Dr. Mesrobian in his individual capacity for the 100-day period between August 8, 2012 and November 16, 2012. On August 8, 2012, the court directed plaintiff to find and name a suable entity for the claims against Dr. Mesrobian within forty-five days, while incarcerated and without the benefit of counsel. Before this time period expired, plaintiff requested a further extension, explaining that without counsel and despite reasonable efforts he was having difficulty discovering the relevant information, including whether an estate had been opened. The court granted the motion to extend and ordered that plaintiff name the proper party by November 16, 2012. In his first amended complaint, filed November 16th, plaintiff named a "special administrator" for Dr. Mesrobian and also filed a motion in which he explained to the court that his FOIA discovery requests regarding Dr. Mesrobian had been denied and asked the court to appoint a special administrator for Dr. Mesrobian.

In *Bryant*, the Seventh Circuit noted that "[d]istrict courts abuse their discretion when they fail to acknowledge a plaintiff's timely discovery request that would produce relevant and necessary information[,]" and that tolling the statute of limitations is appropriate "when a pro se incarcerated plaintiff seeks to identify unknown defendants and has filed a motion that would help him identify those defendants" or where a plaintiff "act[s] with reasonable diligence to obtain the missing information." *See Bryant*, 746 F.3d at 242-43. Here, this court explicitly placed the burden of finding out who to sue for the claims against Dr. Mesrobian on plaintiff, while incarcerated and while acting *pro se*. Thus, under the reasoning of *Bryant*, his efforts to obtain the relevant information from FOIA requests, coupled with his motion to extend, is sufficient to toll his claims against Dr. Mesrobian until November 16th, when he named and asked this court to appoint a special representative.

However, with respect to the remaining defendants, during the period between the dismissal of his original complaint and the filing of his first amended complaint, plaintiff was under no directive from the court, was not awaiting any response as to whether he could proceed, and was free to amend his claims to include new parties. He did not file a discovery motion or otherwise request an extension to locate or discover any other individuals who may have been liable for his injuries. Thus, there is no reason to hold that the statute of limitations was equitably tolled between the original and first amended complaints with respect to the claims against any party other than Dr. Mesrobian, and the court declines to do so.

Finally, pursuant to the court's earlier finding that "the time plaintiff had to wait for his appeal to be completed should not be counted against him," [123] at 8, the court finds it appropriate to equitably toll plaintiff's claims against all remaining parties for the 555–day period between when

he mailed his first amended complaint (and renewed request for counsel) on November 13, 2012 and when counsel filed its appearance on May 22, 2014.

2. Exhaustion of Remedies.

In his supplemental briefing, Dr. Funk argues that plaintiff's claims against him should be dismissed because plaintiff failed to exhaust his administrative remedies with regard to the May 29, 2012 Black Box incident. *See* [183]. As such, an examination of the issue is warranted.

"The Prison Litigation Reform Act provides that no action shall be brought under federal law with respect to prison conditions by a prisoner until such administrative remedies as are available are exhausted." *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008) (citing 42 U.S.C. § 1997e(a)) (internal quotations and alterations omitted). Where "exhaustion (or its lack) [is] apparent," the court may decide the issue without a hearing, but where "genuine issues of material fact concerning compliance with the duty to exhaust are presented[,]" the district court must hold a *Pavey* evidentiary hearing to resolve the issue. *See id.* at 741; *Wagoner v. Lemmon*, 778 F.3d 586, 588, (7th Cir. 2015). The Seventh Circuit has "outlined the procedure that the court should follow" in such circumstances:

> The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Wagoner*, 778 F.3d at 590 (quoting *Pavey*, 544 F.3d at 742).

Here, the question of exhaustion is complicated by the Seventh Circuit's prior rulings in this case. As an initial matter, the United States Supreme Court has held that where "the prisoner has failed to exhaust some, but not all, of the claims asserted in the complaint[,]" he may still proceed on those claims which have been exhausted. *See Jones v. Bock*, 549 U.S. 199, 219-24. In other words, all claims that have been exhausted are allowed to proceed. Here, while failure to exhaust was not a basis for this court's dismissal and the existence of the July 28, 2012 grievance was not known to the Seventh Circuit, it nevertheless found that the June 4, 2009 grievance was sufficient

for plaintiff to proceed on his claims regarding the Black Box incidents in 2009 and 2010, *as well as* the May 29, 2012 incident, because the grievance and plaintiff's claims pertained to a continuing violation. *Stewart*, 559 F. App'x. at 547. Such a ruling is tantamount to holding that the 2009 grievance fully exhausted all plaintiff's relevant claims. For this court to hold otherwise would either run afoul of the Seventh Circuit's ruling or, alternatively, necessitate a finding that the filing of a second grievance can retroactively divest an earlier grievance of the power to exhaust a plaintiff's claims. The court is not satisfied that either approach would be appropriate in the circumstances of this case.

Moreover, the facts as presented appear to show that plaintiff did indeed fully exhaust his July 28, 2012 grievance. As noted, plaintiff had thirty days to appeal the October 17, 2012 denial of his grievance. According to plaintiff's representations, as supported by his Dixon Correctional Center Trust Fund Account, he placed the appeal to the ARB in the prison mailing system on November 15, 2012, twenty-nine days after the denial of his grievance. *See* [184] at 6-7; [184-1] at 3. The Seventh Circuit has held that a prisoner's grievance is considered filed with the ARB when it is first placed in the prison mail system, thus making plaintiff's mailing here timely. *See Dole v. Chandler*, 438 F.3d 804, 813 (7th Cir. 2006). Moreover, a plaintiff exhausts his remedies where he follows the prison's required procedures, even if his grievance is improperly denied for supposed nonconformance. *See id.* at 809. Here, if plaintiff's evidence is to be credited, the ARB's denial based on the untimeliness of his appeal was mistaken and plaintiff did properly exhaust.

Nonetheless, the court cannot say at this stage that plaintiff's proffered evidence is so conclusive or uncontested as to foreclose the possibility of a genuine dispute. As such, Dr. Funk is ordered to inform the court by November 2, 2015 if he believes there is a genuine dispute as to whether plaintiff placed his ARB appeal in the prison mail system within the required thirty days, and if not, whether such failure constitutes a failure to exhaust plaintiff's claims regarding the May 29, 2012 incident notwithstanding the Seventh Circuit's previous findings. In that event, a *Pavey* hearing will be scheduled to resolve the issue.

3. Dr. Carter.

After incorporating the above findings, the timeliness analysis with regard to Dr. Carter is relatively straightforward. The Seventh Circuit found that the claim against Dr. Mesrobian accrued on the last date plaintiff alleged that he was forced to wear the Black Box during his tenure. On the face of the third amended complaint, the last time plaintiff was forced to wear the Black Box during Dr. Carter's tenure was May 14, 2010. Therefore, the statute of limitations began to run on August 28, 2010, when grievance procedures were completed. Applying the 25-day period of equitable tolling attributable to screening the original complaint, the statute of limitations expired September 22, 2012, after the filing of the original complaint but prior to the filing of the first amended complaint. Thus, the claims against Dr. Carter in his individual capacity are untimely unless the second amended complaint, in which he was first named, substituted Dr. Carter for a party named in the original complaint due to plaintiff's mistake regarding the proper party's identity.

The original complaint names Dr. Mesrobian and John Does One through Seven. [1]. The John Does are explicitly alleged to be correctional officers, so the only possible mistake would be

in naming Dr. Mesrobian rather than Dr. Carter. But there is no reason to suspect there was any such mistake. First, despite being filed *pro se*, the original complaint is extremely clear in alleging specific wrongful actions taken by Dr. Mesrobian and alleging specific dates on which plaintiff's resulting injury occurred. Plaintiff alleges that Dr. Mesrobian was deliberately indifferent because he explicitly refused to issue plaintiff a no Black Box permit in the face of plaintiff's repeated requests, despite being personally familiar with plaintiff's clinical situation. As a result, plaintiff alleges he was forced to wear the Black Box (following this lack of intervention) on April 22, 2009 and May 5, 2009, both of which took place during Dr. Mesrobian's tenure as medical director.[3] He alleges that he then filed a grievance, which ultimately resulted in Dr. Carter, explicitly referenced as "Dr. Mesrobian's replacement," issuing him a no Black Box permit. [1] at 10. Finally, plaintiff alleges that *after* Dr. Carter left as medical director, the permit expired and he was again forced to wear the Black Box on May 29, 2012. A close reading of the original complaint thus makes clear that there is no overlap between plaintiff's allegations of wrongdoing and Dr. Carter's tenure as medical director – plaintiff only complains of actions taken before Dr. Carter arrived or after he left.

It is equally clear from the original complaint that plaintiff was aware, not simply of Dr. Carter's existence, but also his role with regard to plaintiff's allegations. In *Krupski*, the Supreme Court held that a plaintiff could mistakenly name the wrong party for purposes of Rule 15(c)(1)(C)(ii), despite being aware of the proper party's existence, due to a misunderstanding of the role that the respective parties played in regard to the underlying claim. *See Krupski v. Costa Crociere S.p. A.*, 560 U.S. 538, 549 (2010) ("[A] plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim."). Here, unlike the situation contemplated in *Kruspki*, there is no reason to doubt that the original complaint correctly sets forth Dr. Carter's role and actions with regard to the allegations in that complaint. Plaintiff set forth specific dates that he was forced to wear the Black Box, April 22, 2009 and May 5, 2009, and plaintiff continues to allege in the third amended complaint that those incidents occurred before Dr. Carter's tenure. Plaintiff alleged, and continues to allege, that he filed a grievance that ultimately resulted in Dr. Carter issuing a no Black Box permit. The fact that plaintiff has since added new and separate allegations of wrongdoing does not mean that he was mistaken with regard to his allegations in the original complaint.

Plaintiff argues that even on its own terms, there are "holes" in the original complaint which make it clear that he was mistaken. To the best the court can discern, plaintiff appears to argue that because he alleged wrongdoing over a long period of time and did not mention Dr. Wahl, it is obvious from the original complaint that he was mistaken as to who was responsible for him being forced to wear the Black Box. These arguments do not address the fact that in the original complaint plaintiff explicitly singled Dr. Mesrobian out for his personal and active involvement in denying his requests for a Black Box permit. It is not at all obvious that plaintiff would have sued Dr. Carter for

_____

[3]While plaintiff alleged additional dates he was forced to wear the Black Box in subsequent complaints, for purposes of relation back the original complaint must be taken on its own terms. And in the original complaint, plaintiff clearly alleges seven separate incidents in which he was forced to wear the Black Box, naming seven separate John Doe correctional officers for each of those seven respective claims. Plaintiff's allegations against Dr. Mesrobian explicitly relate to the two incidents which occurred after plaintiff began complaining to him about having to wear the Black Box.

passively allowing the Black Box restraints to continue even if he had known of and alleged Black Box incidents occurring during Dr. Carter's tenure as medical director.[4]

Plaintiff also argues that his later filings provide context and reveal the "mistakes" in the original complaint. To the contrary, plaintiff's later filings provide further support to the court's finding that, despite acting *pro se*, he meant what he said when he sued Dr. Carter in his official capacity only even though he alleged Black Box incidents occurring during Dr. Carter's tenure. Following this court's dismissal of the first amended complaint, and before Dr. Carter was served, plaintiff filed a 59(e) motion in which he admitted that Dr. Carter was never intended to be named in his individual capacity in either the original or first amended complaint. Plaintiff explained that the official capacity claim in the first amended complaint was simply a continuation of the official capacity claim from the original complaint, substituting Dr. Carter for Dr. Mesrobian because the official holding the relevant office had changed. Finally, plaintiff explained his strategic decisions in even greater detail to the Seventh Circuit on appeal, stressing that the first amended complaint did not sue Dr. Carter in his individual capacity and "the parties are not different with respect to the Medical Director's Office." *See Stewart*, App. Case No. 13-1628, Doc. # 22, at 9.

Plaintiff's representations to the court are important to the analysis for several reasons. First, Rule 15(c)(1)(C) applies to "mistakes" of fact rather than "mistakes" of strategy. *See Hall v. Norfolk Southern Ry. Co.*, 469 F.3d 590, 596-97 (7th Cir. 2006) (noting that strategic errors are "not the type of 'mistake' contemplated by Rule 15(c)," including situations where "[t]here was no mistake of identity [under Rule 15(c)], but rather a conscious choice of whom to sue"). Plaintiff now argues through counsel that as a *pro se* litigant he was unaware of the distinction between individual and official capacity suits. To the contrary, plaintiff accurately explained the difference in his representations to this court and assured the court that he had always intended to limit his claims to Dr. Mesrobian and "the medical director's office." While plaintiff may now regret this limitation, this does not transform his strategic decision into a mistake of fact.

Moreover, the unequivocal nature of plaintiff's representations make his internal state of mind irrelevant in this case. "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period . . . . Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski*, 560 U.S. at 548. Here, where the plaintiff explicitly and repeatedly stated that he was *not* suing Dr. Carter in his individual capacity, it would be erroneous to find that Dr. Carter "knew or should have know" during the Rule 4(m) period that the action would have been brought against him in his individual capacity but for a mistake concerning the proper party's identity.

---

[4] Plaintiff essentially admitted as much in his brief to the Seventh Circuit. In that brief, he explains that he was aware of all the dates he was forced to wear the Black Box, but simply "did not feel the need to mention each date he was placed in the black box restraint after filing his grievance (due to the fact that the grievance tolled the time for filing this claim while it was pending)." *See Stewart*, App. Case No. 13-1628, Doc. # 22, at 6. Moreover, he explained that he was aware of Dr. Wahl's and Dr. Carter's positions as medical directors during those incidents, but nonetheless he did not seek to name any physicians other than Dr. Mesrobian in their individual capacities. *See id.*

For the foregoing reasons, the claims against Dr. Carter are untimely and there was no mistake which would justify relation back under Rule 15(c) with regard to the original complaint.[5] The claims against Dr. Carter are dismissed pursuant to the court's authority under 28 U.S.C. § 1915(e)(2).

4. Dr. Wahl.

The claims against Dr. Wahl are untimely for the same reason. Plaintiff alleges that Dr. Wahl was acting medical director for Dixon Correctional Center from October of 2009 to December of 2009, between the tenures of Dr. Mesrobian and Dr. Carter. [132] at ¶ 6. Thus, like Dr. Carter, the statute of limitations began running with regard to Dr. Wahl when grievance procedures were completed on August 28, 2010, and expired September 22, 2012. Dr. Wahl was also first named in the second amended complaint on November 3, 2014, and thus the claims against her are untimely unless they relate back under Rule 15(c)(1)(C) to the original complaint.

As discussed with regard to Dr. Carter, the only possible party to substitute in the original complaint is Dr. Mesrobian. And for the same reasons, the court cannot find that Dr. Wahl should have known that she would have been named in the original complaint (or even the first amended complaint) but for a mistake regarding the proper party's identity. Moreover, plaintiff explicitly noted in his brief to the Seventh Circuit that he knew Dr. Wahl was medical director during at least one of the Black Box incidents, yet he chose not to name her. Instead, his intent was to raise an individual capacity claim against Dr. Mesrobian and an official capacity claim against the medical director's office. Thus, the Rule 15(c) relation back analysis with regard to Dr. Carter applies equally to Dr. Wahl.

Complicating matters is this court's previous order denying Dr. Wahl's motion to dismiss the claims against her as untimely. The court's decision at that time stemmed in part from its misapprehension that on appeal "the Seventh Circuit expressly held that plaintiff's claim against Dr. Carter was timely despite the fact that the limitations period had expired before plaintiff filed his first amended complaint in November 2012." [123] at 7 (citing *Stewart*, 559 F. App'x. at 547). Based on the court's belief as to what constituted the law of the case, it appeared that the timeliness analysis with regard to Dr. Wahl should be analogous as to that with regard to Dr. Carter. And indeed the timeliness analysis regarding the two is analogous, but as explained above, a closer reading of the Seventh Circuit's opinion makes clear that the court did not recognize a claim against Dr. Carter which related back to the original complaint under Rule 15(c)(1)(C). In fact, the Seventh Circuit did not discuss Dr. Carter at all, but rather correctly noted that plaintiff had made a claim against "the medical director in his official capacity" and found that such a claim was timely with respect to the first amended complaint. *Stewart*, 559 F. App'x. at 549. Thus, this court was incorrect in its belief that it was bound by the law of the case to find timely the claims against Dr.

---

[5] The court notes that despite finding that only the original complaint was timely as to the claims against Dr. Carter, the result would be the same even if the first amended complaint had been timely. Plaintiff's explicit, cogent, and repeated assurances that he meant what he said when he named Dr. Carter in his official capacity only precludes a finding that Dr. Carter would have been named but for "a mistake regarding the proper party's identity" in either the original or first amended complaints.

Carter and, by analogy, Dr. Wahl. As such, the court is free to reexamine the issue in light of a full examination of the record, which reveals that the claims are untimely.

For the foregoing reasons, the claims against Dr. Wahl are untimely and there was no mistake that would justify relation back under Rule 15(c) with regard to the original complaint.[6] The claims against Dr. Wahl are dismissed pursuant to the court's authority under 28 U.S.C. § 1915(e)(2).

5. Dr. Funk.

The timeliness analysis is different with respect to Dr. Funk. As noted, the Seventh Circuit found that the claim against Dr. Mesrobian accrued on the last date plaintiff alleged that he was forced to wear the Black Box during his tenure. The last Black Box incident alleged in the third amended complaint occurred on May 29, 2012, during Dr. Funk's tenure. After tolling for the time attributable to plaintiff's second grievance (136 days), the screening of his original complaint (25 days), and his appeal (555 days), his claims against Dr. Funk were timely into 2016. Thus, the court need not determine whether relation back under Rule 15(c) is appropriate because plaintiff's April 17, 2015 third amended complaint was timely with respect to Dr. Funk. As such, Dr. Funk's motion to dismiss [148] is denied.

6. John Does Two through Fifteen.

The claims against John Does Two through Fifteen are somewhat more difficult to analyze, in part due to the vague nature of the allegations against them. Plaintiff refers to fourteen correctional officers, jointly alleged to have been involved in the various Black Box incidents between 2008 and 2012. Unlike with the original complaint, which named seven John Does allegedly responsible for seven respective incidents between December of 2008 and May of 2012,

it is impossible to determine in the third amended complaint which of the officers are alleged to have been involved in which incidents.

What is clear, however, is that virtually all of the allegations against the fourteen John Does in the third amended complaint are substantially similar to those made against the seven original John Does in the original complaint. In effect, plaintiff claims that the John Doe officers were deliberately indifferent by forcing him to wear the Black Box in the manner described. This court dismissed those claims because the officers were not deliberately indifferent in relying on the judgment of plaintiff's medical professionals. The Seventh Circuit upheld this court's dismissal of the John Doe officers. *See Stewart*, 559 F. App'x. at 549 ("The district court also properly dismissed Stewart's claim against the unnamed guards. His allegations do not plausibly suggest that they were deliberately indifferent to his complaints of severe pain. Indeed, his allegations suggest the opposite, for he says that the guards responded to his complaints by looking in his file for an

---

[6] As noted with Dr. Carter and for substantially the same reasons, the result would be the same even if the court found that the first amended complaint had been timely with respect to the claims against Dr. Wahl.

exemption and then following up to see whether Dr. Mesrobian would issue one.") (internal citations omitted). Thus, the Seventh Circuit's ruling regarding the John Does, to the extent it involves the allegations that they forced plaintiff to wear the Black Box in the manner described, is now the law of the case. *See Waid v. Merrill Area Public Schools*, 130 F.3d 1268, 1272 (7th Cir. 1997) ("The law of the case doctrine generally binds a court to its own previous decision on issues arising earlier in the litigation as well as to decisions entered by a higher court earlier in the litigation.").

The Seventh Circuit has held that the law of the case doctrine, although "not 'hard and fast,'" should not be ignored unless there are "unusual circumstances that justify abandonment of the law of the case includ[ing] (1) substantial new evidence introduced after the first review, (2) a decision of the Supreme Court after the first review that is inconsistent with the decision on that review, and (3) a conviction on the part of the second reviewing court that the decision of the first was clearly erroneous." *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 685 (7th Cir. 2014). In this case, this court and the Seventh Circuit have found that the general allegations against the John Doe officers fail to state a claim. The court has reviewed plaintiff's response to the order to show cause and finds no reason to depart from its previous findings.

Plaintiff notes, however, that the third amended complaint adds new allegations that one of the John Doe officers on May 29, 2012 purposefully beat the Black Box onto plaintiff's wrists when it was malfunctioning, causing him pain and injury. While plaintiff does not identify the relevant officer in his third amended complaint, he identified the officer as "c/o Currins" in his July 28, 2012 grievance. [183-1] at 8. These specific allegations against "c/o Currins," who the court will designate as John Doe Two, may state a claim. As such, the claims against John Doe Two will not be dismissed at this time.

For the foregoing reasons, the claims against John Does Three through Fifteen are dismissed pursuant to the court's authority under 28 U.S.C. § 1915(e)(2).

7. Evanston Insurance Company, as Special Administrator for Dr. Mesrobian.

Evanston Insurance Company moves for judgment on the pleadings on the grounds that this court does not have authority to appoint it as special representative for Dr. Mesrobian under Illinois law. As an initial matter, the court must decide whether it is bound under the law of the case by the Seventh Circuit's discussions regarding 735 ILCS 5/13-209 and the appointment of a "special administrator." As the Seventh Circuit has held, "it is essential to determine what issues were actually decided in order to define what is the 'law of the case.' This requires a careful reading of the reviewing court's opinion: observations or commentary touching upon issues not formally before the reviewing court do not constitute binding determinations." *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998). A review of the Seventh Circuit's opinion, as discussed above, shows that it's discussion of these issues consisted of observations regarding future procedural hurdles for plaintiff. These "procedural hurdles" were not formally before the court and not crucial to or part of its holding regarding the timeliness of the claims against Dr. Mesrobian. Moreover, the court did not take a position on whether an estate existed, whether California law or Illinois law would apply, or ultimately whether a "special administrator" could or should be appointed. Thus, the doctrine of the law of the case does not apply.

Moving to the substance of the motion, the court need not consider every challenge Evanston raises because it agrees with Evanston that it has no authority to appoint a special representative for Dr. Mesrobian under 735 ILCS 5/13-209. As relevant to the present motion, that statute provides as follows:

> (b) If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred:
>
> (1) an action may be commenced against his or her personal representative after the expiration of the time limited for the commencement of the action, and within 6 months after the person's death;
>
> (2) if no petition has been filed for letters of office for the deceased's estate, the court, upon the motion of a person entitled to bring an action and after the notice to the party's heirs or legatees as the court directs and without opening an estate, may appoint a special representative for the deceased party for the purposes of defending the action. If a party elects to have a special representative appointed under this paragraph (2), the recovery shall be limited to the proceeds of any liability insurance protecting the estate and shall not bar the estate from enforcing any claims that might have been available to it as counterclaims.
>
> (c) If a party commences an action against a deceased person whose death is unknown to the party before the expiration of the time limited for the commencement thereof, and the cause of action survives, and is not otherwise barred, the action may be commenced against the deceased person's personal representative if all of the following terms and conditions are met:
>
> (1) After learning of the death, the party proceeds with reasonable diligence to move the court for leave to file an amended complaint, substituting the personal representative as defendant.
>
> (2) The party proceeds with reasonable diligence to serve process upon the personal representative.
>
> (3) If process is served more than 6 months after the issuance of letters of office, liability of the estate is limited as to recovery to the extent the estate is protected by liability insurance.
>
> (4) In no event can a party commence an action under this subsection (c) unless a personal representative is appointed and an amended complaint is filed within 2 years of the time limited for the commencement of the original action.

735 ILCS 5/13-209(b)-(c).

The parties dispute whether section 13-209(b) or 13-209(c) apply to the circumstances of this case. While the statute on its face is arguably ambiguous on this point, this court need not interpret its provisions in a vacuum. The Illinois Supreme Court, which this court is bound to defer to in matters of Illinois statutory interpretation, has unequivocally held that "[t]he provisions of section 13-209(b) presuppose that the plaintiff is aware of the defendant's death at the time he or she

commences the action." *Relf v. Shatayeva*, 2013 IL 114925, ¶ 27. Section 13-209(c) applies "where, as in this case, the defendant's death is not known to plaintiff before expiration of the limitations period and, unaware of the death, the plaintiff commences the action against the deceased defendant directly. *See id.*; *see also Relf*, 2013 IL 114925, at ¶ 70 (C.J. Kilbride, dissenting) (agreeing with the majority that "[s]ubsection (c) of section 13-209 specifically addresses situations when a plaintiff is unaware, at the time of filing the action, that a named defendant is dead"). This court reads *Relf* as holding that the plaintiff's mental state at the time of initially filing the action is the relevant inquiry for determining which section applies: if the plaintiff is not aware that the defendant is dead when filing the action, 13-209(c) applies and 13-209(b) does not. Because 13-209(c) does not provide for the appointment of a special representative, Evanston's motion [168] is granted and Evanston is dismissed.

Plaintiff is not without recourse, however. As noted, his claims were tolled during the 25-day period when the court screened his original complaint, the 100-day period during which the court gave him specific time limits to name a suable entity, and the 555-day period attributable to this court's dismissal of his first amended complaint and his subsequent appeal. As such, with regard to plaintiff's claims against Dr. Mesrobian, the statute of limitations expired on July 9, 2014. Section 13-209(c) allows for plaintiff to proceed with reasonable diligence, which the court notes plaintiff thus far has exercised, to name and serve Dr. Mesrobian's personal representative, so long as he is able to open an estate in state court and do so before July 9, 2016. *See* 735 ILCS 5/13-209(c); *see also In re Estate of Gebis*, 186 Ill.2d 188, 194 (1999) (noting that "the creditors of *any* decedent . . . may file a claim against the decedent's estate once an executor or administrator is appointed and the decedent's estate is opened. *See* 755 ILCS 5/18–1 (West 1996). Or, if the deceased [person's] estate is not yet open . . . any decedent's creditors . . . may petition the circuit court either for admission of the decedent['s] will to probate (*see* 755 ILCS 5/6–2 (West 1996)) or for letters of administration (*see* 755 ILCS 5/9–3 (West 1996))").

Due to the length of the case and the anticipated extensive discovery still remaining, the parties should be prepared to discuss the possibility of a settlement conference at the next status conference with Magistrate Judge Johnston.

Date: 10/21/2015             ENTER:

                           *Philip G. Reinhard*

                           _____
                           United States District Court Judge

                                 Electronic Notices. (LC)