38428/01245/MHW/SJG

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| LAVERTIS STEWART,<br><br>                Plaintiff,<br><br>v.<br><br>KENNETH BLICKENSTAFF, in his capacity as Personal Representative for the Estate of ANTREAS MESROBIAN; WEXFORD HEALTH SOURCES, INC.; ARTHUR FUNK; JEFFERY CURRENS; LESLIE A. YEPSEN; and BARRY A. JOHNSON,<br><br>                Defendants. | Case Number 12 C 50273<br><br>Hon. Judge Philip G. Reinhard<br><br>Magistrate Judge Iain D. Johnston |

<u>**KENNETH BLICKENSTAFF, IN HIS CAPACITY AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF ANTREAS MESROBIAN, M.D., WEXFORD HEALTH SOURCES, INC. AND ARTHUR FUNK, M.D.'S MOTION FOR JUDGMENT ON THEIR FIRST AFFIRMATIVE DEFENSE – QUALIFIED IMMUNITY**</u>

     NOW COME the Defendants, KENNETH BLICKENSTAFF, in his capacity as Personal Representative for the Estate of ANTREAS MESROBIAN, M.D. ("Dr. Mesrobian"), ARTHUR FUNK, M.D. ("Dr. Funk"), and WEXFORD HEALTH SOURCES, INC. ("Wexford"), by and through their attorneys, CASSIDAY SCHADE, LLP, and move this Honorable Court pursuant to Federal Rule of Civil Procedure 12(c) for Judgment on their First Affirmative Defense – Qualified Immunity, and in support thereof state as follows:

     **I.    INTRODUCTION**

     Plaintiff, an inmate at the Dixon Correctional Center in Dixon, Illinois brings this cause of action pursuant to 42 U.S.C. § 1983 alleging that Dr. Mesrobian,[1] Dr. Funk, and Wexford

---

[1] The Defendants note that, despite the number of motions and briefs filed in this case to date, Dr. Mesrobian has not been at issue in this case until July 19, 2016. [ECF #245]. This motion is made at the earliest opportunity.

1

violated his Eighth Amendment rights vis-à-vis the use of "black box" restraints during Plaintiff's trips to the University of Illinois Chicago Hospital. Plaintiff alleges that these restraints cause him pain when he wears them, due to his carpal tunnel and shoulder bursitis conditions. Plaintiff alleges that he had to wear these restraints for several hours on several occasions, and his Fifth Amended Complaint [ECF #238] alleges a series of incidents in 2009 – 2012 where he allegedly was either denied a medical exemption for these restraints, or had an exemption from the black box restraints but the prison security staff refused to honor the exemption at the time of his trips to UIC.

With respect to Dr. Mesrobian, Plaintiff alleges that on March 4, 2009, he told Dr. Mesrobian for the first time that he did not like wearing the black box restraints during medical writs for off-site medical treatment. [ECF #238, ¶ 17]. Plaintiff also alleges that Dr. Mesrobian agreed to issue a medical order instructing the correctional officers not to use a black box restraint on Plaintiff. [*Id*.]. However, on March 31, 2009, Plaintiff alleges that he was about to go on a medical writ to the UIC medical center, only to learn that Dr. Mesrobian had not placed a black box exemption in his medical chart and would not do so. [*Id*. ¶ 18]. Plaintiff alleges that on April 24, 2009 and May 8, 2009, he again saw Dr. Mesrobian and demanded that he have an exemption from wearing a black box restraint, but Dr. Mesrobian refused to acquiesce to Plaintiff's demands. [*Id*. ¶ 20–22, 26]. Plaintiff also alleges that on May 8, 2009, Dr. Mesrobian prescribed him Motrin, which caused him to have stomach and liver pains. [*Id*. ¶ 27].

The only allegation against Dr. Funk stems from an alleged incident on May 29, 2012 when Plaintiff was allegedly headed for a medical appointment at UIC. Plaintiff alleges that his black box exemption had expired and there was no order in his medical writ package directing that the black box should not be used on him. [ECF #238, ¶ 32]. Plaintiff then alleges that Dr.

Funk, "in his capacity as Regional Medical Director, Defendant Funk was responsible for supervising all health care delivered at Dixon, providing direct patient care, consulting on patient care, ensuring timeliness and implementation of appropriate medical care, and reliving problems related to patient safety issues and patient complaints and grievances." [*Id*. ¶ 33]. Plaintiff further alleges that "As a treating or supervising physician of Mr. Stewart in May 2012, Funk knew or should have known of Mr. Stewart's serious medical conditions, his complaints regarding the severe pain that the Black Box caused, and his filed grievance regarding the Black Box." [*Id*. ¶ 33]. Despite these broad accusations, Plaintiff does not allege any instance where he talked to Dr. Funk about the use of the black box restraints and his desire to be exempt from wearing them on medical writs.

With respect to Wexford, Plaintiff alleges a *Monell*-style claim. *See Monell v. N.Y. Dep't of Soc. Servs*., 436 U.S. 658 (1978). Plaintiff alleges that "Wexford, by and through its agents, knew or should have known of Mr. Stewart's need for medical care and knew or should have known that failure to timely provide such care would result in pain and suffering and exacerbation of Mr. Stewart's serious medical conditions." [ECF #238 ¶ 57]. Plaintiff also alleges that Wexford maintained a policy or practice of pressuring its employees to deny treatment to inmates with serious medical conditions. [*Id*. ¶¶ 55–56]. Despite these broad accusations, Plaintiff does not allege any instance where he told Wexford of his alleged pain and suffering, and bases his theory of liability against Wexford on its policies or procedures.

Defendants Dr. Mesrobian, Dr. Funk, and Wexford have filed an Answer and Affirmative Defenses to Plaintiff's Fifth Amended Complaint, including a qualified immunity defense. [ECF #245]. The Defendants now move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on their First Affirmative Defense, Qualified Immunity.

## II. LEGAL STANDARDS

A. <u>Standard of Review for Rule 12(c) Motion for Judgment on the Pleadings</u>

"A dismissal under Rule 12(b)(6) and judgment on the pleadings under Rule 12(c) both employ the same standard: the complaint must state a claim that is plausible on its face." *Vinson v. Vermilion Cnty.*, Ill., 776 F.3d 924, 928 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12 motion based on an affirmative defense like qualified immunity, the complaint must contain "everything needed to show that the defendant must prevail." *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 658 F.3d 662, 665 (7th Cir. 2011). In other words, it must be "plain from the complaint that the defense is indeed a bar to the suit" before it can be dismissed at the Rule 12 stage. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010).

B. <u>Qualified Immunity</u>

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam) (quotation marks omitted); *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor*, 135 S. Ct. 2044 (quotation marks omitted). "When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (alteration and quotation marks omitted). The Courts "do not require a case directly on point, but existing precedent must have placed the statutory or

constitutional question beyond debate." *Id.* (quotation marks omitted); *see also Mullenix v. Luna*, 577 136 S. Ct. 305, 308 (2015) (quotation marks omitted); and *Volkman*, 736 F.3d at 1090 ("[T]he Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality and the Seventh Circuit has long held that the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted.") (alteration, citation, and quotation marks omitted)).

"The qualified immunity analysis therefore traditionally involves a two-part inquiry." *Volkman,* 736 F.3d at 1090. "The first question is whether the defendants' conduct violated a constitutional right." *Id*. "The second question is whether that particular constitutional right was clearly established at the time of the alleged violation." *Id*. (quotation marks omitted). The burden to make that showing rests with Plaintiff, and he must "show that the contours of the right he alleges was violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quotation marks omitted). "[F]or qualified immunity to be surrendered, preexisting law must dictate, that is, truly compel the conclusion for every like-situated, reasonable government agent that what he is doing violates federal law in the circumstances." *Id*. (alterations and quotation marks omitted).

### III.   ARGUMENT

Plaintiff alleges that Dr. Mesrobian, Dr. Funk, and Wexford, as providers of medical services at the Dixon Correctional Center, were acting under color of state law at the time of alleged events in this case. [ECF #238 ¶¶ 6, 8]. As such, qualified immunity is extended to them and their alleged actions in this case. *See Filarsky v. Delia*, 132 S. Ct. 1657, 1665 (2012) (holding that qualified immunity typically extends to all employees of a state government, including those hired on a part-time or contractual basis).

Plaintiff has no clearly defined Eighth Amendment constitutional right to demand any kind of specific medical treatment—including the kind of restraints he wears while leaving the Dixon Correctional Center on medical writs. *Hudson v. McMillian,* 112 S. Ct. 995, 1000 (1992) ("society does not expect that prisoners will have unqualified access to health care"); *Wilson v. Seiter,* 111 S. Ct. 2321 (1991); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir, 1997); *Jackson v. Kotter,* 541 F.3d 688, 697 (7th Cir. 2008). Inmates cannot dictate the course of their medical treatment, and Plaintiff's disagreement with the decisions of his medical providers does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v.* Saini, 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). Dr. Mesrobian, Dr. Funk, and Wexford could not have known that a failure to provide Plaintiff with an exemption from the use of black box restraints amounted to a violation of Plaintiff's Eighth Amendment rights, since there is no clearly established law or precedent circumscribing such behavior. As such, Dr. Mesrobian, Dr. Funk, and Wexford are entitled to qualified immunity on Plaintiff's Eighth Amendment claims against them.

Additionally, Dr. Mesrobian could not have known that he was violating Plaintiff's Eighth Amendment rights by providing him with Motrin, which Plaintiff claims upset his stomach and liver. [ECF #238, ¶ 27]. If Dr. Mesrobian gave Plaintiff the wrong pain medication, such conduct would, at the very most, amount to negligence, not deliberate indifference. Negligence, gross negligence, or even tortuous recklessness is not enough to establish a claim for deliberate indifference. *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir. 1985). Unsuccessful medical treatment, neglect, medical malpractice, nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th

Cir. 1991); *Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle,* 429 U.S. at 106). Negligence has <u>never</u> been a basis for a deliberate indifference claim, and to hold otherwise would amount to a novel development in the law. On the contrary, there has never been a clear constitutional prohibition against a physician prescribing an inmate an over-the-counter pain medication like Motrin, even if the inmate has Hepatitis-C. Plaintiff's complaint about the pain medication that he was prescribed is a mere disagreement with Dr. Mesrobian's medical judgment that is not actionable under the Eighth Amendment. *Varnado*, 920 F.2d at 321; *Berry,* 604 F.3d at 441. Therefore, there was simply no way for Dr. Mesrobian to know that his conduct was prohibited by the Eighth Amendment, and is entitled to qualified immunity on that claim.

Dr. Funk could not have known that he was violating Plaintiff's Eighth Amendment constitutional rights in his supervisory role as Wexford's Regional Medical Director. Of course, the opposite is true—there is no vicarious liability in claims brought pursuant to Section 1983, and supervisory officials are generally shielded from liability. *See, e.g., Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (fact that plaintiff's medical needs were being addressed by the medical staff insulated the warden from liability); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care."). Dr. Funk can only be held responsible to the extent he was personally involved in Plaintiff's medical treatment. *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (plaintiff must establish that each of the defendants actually knew (independently and subjectively) that he needed treatment for a serious medical condition or risk but nevertheless <u>purposely</u> and <u>deliberately</u> withheld such treatment). Merely acting as a supervisor of medical services does

not mean that he was aware of Plaintiff's medical conditions or his issues with the black box restraints, or that Dr. Funk was consciously disregarding Plaintiff's complaints about the black box restraints. To hold Dr. Funk liable simply because he supervised medical providers in several prisons throughout Illinois would amount to a paradigm shift in the law, and essentially expose him to limitless liability for medical care he did not personally render.

Nor has Plaintiff alleged <u>any</u> specific instances in which he complained to Dr. Funk about the use of black box restraints prior to wearing them on May 29, 2012. Taking only Plaintiff's well-pled allegations as true, Plaintiff has failed to demonstrate that Dr. Funk was personally aware of any complaints of pain and suffering related to the use of the black box restraints. Again, Dr. Funk could not have known that he was violating Plaintiff's Eighth Amendment rights if Plaintiff never actually complained to Dr. Funk about the use of the black box restraints, and to hold Dr. Funk liable otherwise would amount to a change in law from which he is immune. *Sellers*, 41 F.3d at 1102. Dr. Funk could not have known that he was violating Plaintiff's Eighth Amendment rights if Plaintiff never actually saw Dr. Funk and explained his issues with wearing a black box prior to May 29, 2012—a crucial element of liability that Plaintiff has failed to allege with any specificity in his Fifth Amended Complaint. To otherwise fictitiously impose knowledge on Dr. Funk would, again, amount to a drastic shift in the well-settled law of deliberate indifference claims.

Moreover, the fact that Plaintiff's black box exemption lapsed prior to May 29, 2012, but was not renewed, amounts to mere negligence at best. Negligence is not, and has never been, a basis for liability in Section 1983 actions. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010). To hold otherwise would amount to a drastic shift in the law from which Dr. Funk and Wexford are immune.

Nor can Dr. Mesrobian, Dr. Funk, and Wexford be liable for the actions of the prison security staff at the prison. Again, there is no *respondeat superior* liability or vicarious liability in Section 1983 actions, and a defendant's liability extends no further than that defendant's personal actions. To the extent Plaintiff tries to hold Dr. Funk and Wexford liable for the prison security staff's refusal to honor the black box exemptions at the time of Plaintiff's medical writs, they are immune to such a theory of liability.

Finally, even taking Plaintiff's well-plead allegations as true, Wexford is immune under these circumstances. "In this circuit, a private corporation cannot be held liable under § 1983 unless it maintained an unconstitutional policy or custom." *Perez v. Fengolio*, 792 F.3d 768, 780 (7th Cir. 2015). "Respondeat superior liability does not apply to private corporations under § 1983." *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014). Moreover, "isolated incidents do not add up to a pattern of behavior that would support an inference of a custom or policy, as required to find that Wexford as an institution/corporation was deliberately indifferent to [a prisoner's] needs." *Id.* at 796. Finally, the fact that a plaintiff argues a policy or practice is deliberately indifferent in the abstract is insufficient; "[r]ather, a municipal policy or practice must be the 'direct cause' or 'moving force' behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (internal citations omitted). "In other words, it is when execution of [the] policy or custom inflicts the injury that the . . . entity is responsible under § 1983." *Id.* (internal quotations omitted).

Here, Plaintiff complains about the use of security restraints—something that is beyond the purview of Wexford's medical duties at the Dixon Correctional Center. Wexford could not have known that it was violating Plaintiff's Eighth Amendment rights by failing to dictate to the

9

prison security staff when and how it should be using restraints on inmates when they leave the prison. Wexford could not have known that a single inmate's complaints about his medical treatment would amount to a "wide spread" unconstitutional custom and practice. Wexford could not have known that its employees, Dr. Mesrobian and Dr. Funk, were violating Plaintiff's constitutional rights by not acquiescing to his demands to choose the kinds of restraints he wanted to wear on medical writs. Moreover, Plaintiff alleges that another Wexford Medical Director, Dr. Imhotep Carter, actually granted Plaintiff a black box exemption for several years. [ECF #238 at ¶ 28]. Given these incongruous facts—that Wexford has a "widespread policy" to deny inmates necessary medical care, while at the same time one of Wexford's employees, Dr. Imhotep Carter, actually *did the opposite* and issued the black box exemption—Wexford is entitled to qualified immunity.

In short, even if the conduct alleged in Plaintiff's Fifth Amended Complaint[2] amounts to a violation of Plaintiff's rights, at no time during the dates of alleged wrongdoing was there any clear-cut legal precedent from which Dr. Mesrobian, Dr. Funk, and Wexford could conclude that they were violating Plaintiff's Eighth Amendment constitutional rights, and therefore, Dr. Mesrobian, Dr. Funk, and Wexford are entitled to qualified immunity against Plaintiff's claims.

WHEREFORE, the Defendants, KENNETH BLICKENSTAFF, in his capacity as Personal Representative for the Estate of ANTREAS MESROBIAN, M.D., ARTHUR FUNK, M.D., and WEXFORD HEALTH SOURCES, INC., respectfully request that this Honorable Court grant the instant Rule 12(c) Motion for Judgment on the Pleadings; dismiss KENNETH BLICKENSTAFF, in his capacity as Personal Representative for the Estate of ANTREAS

---

[2] To the extent that any part of this motion is denied based on the allegations in Plaintiff's Fifth Amended Complaint, the Defendants reserve the right to readdress their qualified immunity at summary judgment.

MESROBIAN, M.D., ARTHUR FUNK, M.D., and WEXFORD HEALTH SOURCES, INC., with prejudice; and for any other relief deemed equitable and just.

        Respectfully submitted,

        CASSIDAY SCHADE LLP

        By: /s/ Stephen J. Gorski

        One of the Attorneys for Defendants, KENNETH BLICKENSTAFF, in his capacity as Personal Representative for the Estate of ANTREAS MESROBIAN, M.D., ARTHUR FUNK, M.D. and WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller
Stephen J. Gorski
CASSIDAY SCHADE LLP
120 W. State Street, Suite 401
Rockford, IL  61101
Phone: 815-962-8301
Fax:     815-962-8401
mweller@cassiday.com
sgorski@cassiday.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 2, 2016, I electronically filed the foregoing document with the clerk of the court for Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

                                                                    /s/ Stephen J. Gorski