IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| LaVertis Stewart, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12 C 50273 |
| | ) | |
| vs. | ) | |
| | ) | |
| Wexford Health Sources, Inc., et al., | ) | Judge Philip G. Reinhard |
| | ) | |
| Defendants. | ) | |

**ORDER**

Defendant's motion for summary judgment [412] is granted. Judgment is entered in favor of defendant, Wayne Steele, and against plaintiff. Any status hearings previously set before Magistrate Judge Jensen are stricken. This case is terminated.

**STATEMENT-OPINION**

Plaintiff, LaVertis Stewart, brings this action against defendants, Wayne Steele (in both his individual capacity and his official capacity), Kenneth Blickenstaff, in his capacity as personal representative of the Estate of Antreas Mesrobian, M.D., deceased, Arthur Funk, M.D., and Wexford Health Sources, Inc. ("Wexford") pursuant to 42 U.S.C. § 1983 claiming defendants violated his constitutional right not to be subjected to cruel and unusual punishment. Steele moves for summary judgment [412]. Blickenstaff, Dr. Funk, and Wexford separately move for summary judgment [406].[1]

Plaintiff is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and has been incarcerated at IDOC's Dixon Correctional Center ("Dixon") since 2003. Wexford is contracted to provide medical services at Dixon. Steele was the Assistant Warden of Operations at Dixon from May 2016 until April 2017. Pursuant to IDOC policy, black box restraints are used on all inmates who leave Dixon unless an inmate has a medical exemption. A black box restraint is a set of normal handcuffs with a black box over the link between the cuffs. IDOC does not have any policies regarding which inmates should receive a black box exemption. Wexford medical providers determine whether an inmate should receive a black box exemption and IDOC employees follow the orders of those providers. Only the prison warden has the

---

[1] The motion of Blickenstaff, Dr. Funk, and Wexford is disposed of by a separate order entered today.

1

authority to override a medical provider's decision to grant a black box exemption.[2]
Plaintiff has several medical conditions that require ongoing care, including hepatitis C, cirrhosis of the liver, carpal tunnel, tennis elbow, arthritis, shoulder bursitis, shoulder impingement, shoulder capsulitis/arthritis, arthritis bone spurs, and tendinitis.  According to plaintiff, wearing the black box causes him pain both while wearing the black box and in the days after.  Plaintiff has repeatedly asked for black box exemptions and repeatedly notified Wexford and IDOC staff about the issues he experiences with the black box.  Plaintiff sometimes was denied a black box exemption by Wexford providers and sometimes was granted an exemption by them.  While Dr. Mesrobian was Dixon's medical director, he never granted plaintiff a black box exemption.  Dr. Carter granted him a black box exemption in April 2010 and renewed the exemption for another six months on October 11, 2010.  Plaintiff received another black box exemption on April 25, 2011 for another six months.  This black box exemption expired and plaintiff was placed in the black box restraints when out on a medical writ on May 29, 2012.  Plaintiff was again given a black box exemption on February 12, 2013.  This exemption was for a year.  He received another year-long black box exemption on January 9, 2014 and a four month black box exemption on December 24, 2014.  After May 29, 2012, plaintiff does not recall wearing the black box restraint until November 4, 2016.  He recalls being placed in the black box on four occasions after November 4, 2016, including on December 6, 2016 and December 23, 2016.  Plaintiff received a black box exemption again in March 2017 this time from Dr. Chamberlain.

Plaintiff claims Steele, in both his individual capacity and in his official capacity, was deliberately indifferent to plaintiff's serious medical needs.  Looking to his individual capacity clam, plaintiff claims Steele failed to take action to get plaintiff a black box exemption despite Steele's knowledge that wearing the black box restraints created a substantial risk of serious harm to plaintiff.  He claims Steele even directed Wexford medical providers not to give inmates black box exemptions unless they had a broken wrist or arm.

---

[2] In paragraph 16 of his statement of facts, Steele states "[t]here are no IDOC employees that can override a clinical decision of a provider in deciding whether an inmate should receive a black box permit." (Dkt # 413, ¶ 16)  This statement is taken from the deposition testimony of IDOC employee Amber Allen. (Dkt # 413-7, p. 7 [Ex. G. p. 23:5-11]).  Plaintiff disputes this statement of fact (Dkt # 420-1, p. 5, response to Dkt # 413, ¶ 16)  He cites to the deposition testimony of Steele and Dr. Funk to support his dispute.  Steele testified that the warden could overturn a black box exemption but that he had "never seen a warden overturn a doctor." (Dkt # 407-5, p. 13 [Ex. E, p.50:1-4]).  When asked whether he was aware of anyone else who could override a decision to provide a "no-black-box permit" he responded "[a]gain, I don't think there's anything in there to override a medical person."  When asked if he was aware of any times where such a permit was overridden, he responded "[n]o, not in my entire career." (Id.)  Dr. Funk testified "security also said they had the discretion to vary the cuffing based on their assumption of need."(Dkt # 407-7, p. 22 [Ex. G p. 84:2-12]).  Plaintiff also states in his dispute of ¶ 16 that "[s]everal correctional officers testified IDOC employees can remove a black box from an inmate in certain circumstances."  But, this does not go to overriding a black box exemption given by a doctor but to removing the restraints at a particular time (i.e. having an MRI) when a black box exemption has not been given.  Neither Dr. Funk's testimony nor that of the correctional officers suggests any IDOC employee can override a medical provider's grant of a black box exemption.  Taking the evidence most favorably to the plaintiff, Steele's testimony that the prison warden could overturn a doctor's black box exemption, will be taken as true rather than ¶ 16 of Steele's statement of fact which stated no IDOC employee could overturn a black box exemption.

2

"As the 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial. Such a dispute exists when there is sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in the non-moving party's favor as to any issue for which it bears the burden of proof." Grant v. Trustees of Indiana Univ., 870 F.3d 562, 568 (7th Cir. 2017) (citations and quotation marks omitted).

Plaintiff does not present any admissible evidence that Steele directed Wexford medical providers to grant black box exemptions only to inmates with broken arms or wrists. The only evidence plaintiff argues on this point is his own testimony that Dr. Chamberlain told him Steele had issued this directive.[3] This statement of Dr. Chamberlain's is inadmissible hearsay.

As relevant here, Fed. R. Evid. 801(a) defines "statement" to mean "a person's oral assertion." Rule 801(b) defines "declarant" to mean "the person who makes the statement." Dr. Chamberlain is the declarant and his statement is that Steele had instituted a policy that prevented inmates from receiving exemptions unless they had a broken wrist or a broken arm. Plaintiff is offering this statement in evidence to prove the truth of the matter asserted in the statement – i.e. that Steele had instituted a policy that Wexford medical providers should grant black box exemptions only to inmates with broken arms or wrists. This falls within the definition of hearsay. Fed. R. Evid. 801(c).

Plaintiff argues, however, that this statement is not inadmissible hearsay because, pursuant to Fed. R. Evid. 801(d)(2)(D), it is instead, a non-hearsay admission by Wexford. Rule 801(d)(2)(D) provides that a statement made by an opposing "party's agent or employee on a matter within the scope of that relationship and while it existed" is not hearsay when it is offered against the opposing party. Since Dr. Chamberlain was an employee of Wexford when he made the statement and the statement was made within the scope of his employment relationship with Wexford, plaintiff contends the statement is admissible non-hearsay under Rule 801(d)(2)(D).

The problem with this argument is that the statement is being offered against Steele not against Wexford. Dr. Chamberlain was not Steele's employee and Rule 801(d)(2)(D) applies only where the statement is made by an employee of the party against whom the statement is

---

[3] Plaintiff also stated in a declaration he filed [420-2] that Wexford employee Nurse Tuell told him Steele had issued this directive. While plaintiff does not discuss Nurse Tuell's statement in his brief, her statement is hearsay for the same reasons as Dr. Chamberlain's statement. The court notes that Steele asserts the court should disregard facts asserted in plaintiff's declaration as they are "inadmissible as self-serving statements without factual support." Steele cites Palmer v. Marion County, 327 F.3d 588 (7th Cir. 2003) for this proposition. But, as the Court of Appeals clarified in Hill v. Tangherlini, 724 F.3d 965, 967 (7th Cir. 2013), statements in affidavits, deposition testimony, and "other written statements by their nature are self-serving" and are admissible when based on personal knowledge. The statements in plaintiff's declaration are not inadmissible because they are self-serving though some of them, like the one concerning Nurse Tuell's statement about Steele issuing a directive, may be inadmissible for other reasons.

3

being offered. Dr. Chamberlain's statement to plaintiff that Steele instituted a policy that inmates could not receive black box exemptions unless they had broken wrists or arms is not an admissible statement by an employee of the party against whom it is offered. It is hearsay and inadmissible. Fed. R. Civ. P. 802.

Plaintiff also argues the statement is not hearsay pursuant Rule 801(d)(2)(A) because "Steele's statement to Dr. Chamberlain falls squarely into the definition of a non-hearsay admission because Steele himself is a defendant." Fed. R. Evid. 805 provides: "Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule." As just discussed, Dr. Chamberlain's statement to plaintiff is hearsay. Thus, even if Steele's purported statement to Dr. Chamberlain is not hearsay, Dr. Chamberlain's statement to plaintiff about it is hearsay. Since one part of the combined statements (Dr. Chamberlain's) is hearsay, neither part of the combined statements is admissible. See Jordan v. Binns, 712 F.3d 1123, 1131 (7th Cir. 2013) (holding inadmissible the statement of a state trooper about what the defendant told the trooper the plaintiff had said to the defendant (that the accident was plaintiff's fault not defendant's) because while the plaintiff's statement was a non-hearsay admission by the party against whom it was being offered, the defendant's statement to the trooper was hearsay).

Plaintiff also contends Steele was deliberately indifferent to plaintiff's serious medical needs because Steele was actually aware Wexford refused to give plaintiff a black box exemption and of the pain plaintiff was experiencing as a result. Plaintiff argues Steele acknowledges having at least two conversations with plaintiff about these issues. Plaintiff also states he sent Steele four letters explaining that Wexford's refusal to give him a black box exemption was causing him "enormous pain, injury, and suffering" and that Steele admits he was aware of a grievance plaintiff filed regarding this issue. Plaintiff argues Steele cites "no evidence that he did anything to investigate or correct Dixon's staff's repeated refusal to provided [plaintiff] a Black Box exemption. Even after promising [plaintiff] he would look into the issue, Steele has no evidence he took any action at all."

Plaintiff was not placed in the black box restraints for the approximately four and one half year period beginning May 29, 2012 and ending November 4, 2016. At some point prior to November 4, 2016, when plaintiff learned his black box exemption had expired he went to see Dr. Chamberlain to get it renewed. Dr. Chamberlain did not renew it at that time. Thereafter, plaintiff was placed in the black box restraints on November 4, 2016, December 6, 2016, December 23, 2016 and on at least two other occasions after November 4, 2016.

As noted above, Steele began working at Dixon in May 2016 and left Dixon in April 2017. While plaintiff argues Steele acknowledges having "at least two conversations with [plaintiff] about these issues" (Dkt. # 419, p.7), plaintiff's citations to the record in support of this argument (Dkt. # 413, ¶¶ 36-37) in turn cite to plaintiff's testimony in his continued deposition (Dkt # 413-4, pp.3-4). In that testimony plaintiff testified that he had "[t]wo, at the most, probably" conversations with Steele and that "in one, I had to ask him about the situation

of me not getting the black box." Plaintiff did not recall when this conversation took place but he testified it was the only conversation he had with Steele about the black box and that it lasted for "[j]ust a few seconds." (Dkt. # 413-4, p. 4). In that conversation, Steele responded to plaintiff's question about a black box exemption by saying he would look into it.

Plaintiff also testified he sent Steele four letters concerning a black box exemption. He testified the content of the letters was "[i]nforming him that I had injuries to my shoulder and both my wrists, and that I went to U of I regularly to see specialists; and being in the black box caused me excruciating pain, and that I had had exemptions before, and that Dr. Chamberlain had told me that according to orders issued by him, by Warden Steele, that he wasn't supposed to give out any more black box exemptions unless a person had a broken wrist or arm." (Dkt # 413-4, p. 4) Steele did not respond to any of these letters. Plaintiff also filed a grievance dated January 3, 2017. Steele testified in his deposition he was aware of this grievance because it was directed at him. The grievance detailed plaintiff's shoulder, forearm, and wrist injuries and the pain wearing the black box restraints caused him. (Dkt # 420-3, pp. 2-3) Evidence supplied by plaintiff, shows this grievance proceeded through the IDOC grievance process with the grievance officer noting that "all treatment including medical orders must be ordered by the Medical Practitioner and not a matter of inmate preference. This Grievance Officer has no authority to evaluate clinical decisions made by a licensed physician." (Dkt # 420-3, p.4) The grievance officer recommended denying the grievance and the warden concurred. (Id.) The denial was appealed and the Administrative Review Board denied the appeal noting "only a doctor can order this exemption." (Dkt # 420-3, p. 5) The director of IDOC concurred in this decision.

Steele never spoke with Dr. Chamberlain about plaintiff's medical care or Dr. Chamberlain's refusal to give plaintiff a black box exemption.

Plaintiff's argument essentially is that from Steele's brief conversation with plaintiff about the black box, the four letters plaintiff sent him (the letters are not in the record and there is no evidence in the record that Steele ever saw them), and plaintiff's January 3, 2017 grievance, that Steele should have ordered Dr. Chamberlain to give plaintiff a black box exemption and that his failure to do so was deliberately indifferent to plaintiff's serious medical needs.

"Courts interpret the Eighth Amendment, as incorporated through the Fourteenth Amendment, to impose a duty on states to provide adequate medical care to incarcerated individuals. Officials violate this duty if they display deliberate indifference to serious medical needs of prisoners." McGee v. Adams, 721 F.3d 474, 480 (7th Cir. 2013) (quotation marks and citations omitted.) To survive a motion for summary judgment, plaintiff "must satisfy two elements, one objective and one subjective." Id. "To satisfy the objective element, [plaintiff] must present evidence supporting the conclusion that he had an objectively serious medical need. A medical need is considered sufficiently serious if the inmate's condition has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention. As for the subjective element, [plaintiff] must show that the defendants were aware of his serious medical need and were deliberately indifferent to it.

5

Deliberate indifference is more than negligence and approaches intentional wrongdoing. To establish deliberate indifference, [plaintiff] must meet essentially a criminal recklessness standard, that is, ignoring a known risk. Even gross negligence is insufficient to impose constitutional liability." Id., at 480-81 (quotation marks and citations omitted).

"[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011). Non-medical defendants can rely on the expertise of medical personnel. Id. "An administrator does not become responsible for a doctor's exercise of medical judgment simply by virtue of reviewing an inmate grievance." Adams v. Durai, 153 F. Appx. 972, 975 (7th Cir. 2005).

The evidence submitted shows that Wexford medical staff was responsible for determining black box exemptions based on the exercise of their professional medical judgment and IDOC employees abided by the Wexford provider's decisions on granting black box exemptions. As discussed in the order entered today granting summary judgment to Wexford, Dr. Funk, and Dr. Mesrobian's personal representative, plaintiff did not present any evidence that leaving this decision to the professional medical judgment of the Wexford medical staff was unconstitutional. The court noted in that order that "there is no evidence any member of Wexford's medical staff who treated plaintiff was unaware of plaintiff's medical conditions nor of his claim that wearing the black box restraints caused him severe pain. The evidence presented in this case shows the medical staff members plaintiff asked for a black box exemption evaluated plaintiff's request in light of his medical conditions and exercised their professional judgment in either granting or denying the request. Plaintiff may be dissatisfied with some of the decisions made by Wexford's staff members but he has not offered any evidence that a policy allowing the exercise of professional medical judgment in determining whether to grant black box exemptions is, itself, a violation of plaintiff's Eight Amendment rights."

Dr. Chamberlain exercised his professional judgment. Initially he judged plaintiff's medical conditions did not warrant a black box exemption. Later, he determined a black box exemption should be issued to plaintiff. Plaintiff has not presented any evidence from which it could be concluded that Steele was deliberately indifferent to plaintiff's serious medical needs by not directing Dr. Chamberlain to grant the black box exemption sooner. There is no evidence Steele had the authority to direct Wexford staff to issue black box exemptions. In fact, the evidence shows only members of the medical staff could make this determination. The only evidence Steele even knew of plaintiff's complaints about not receiving a black box exemption is plaintiff's one brief conversation with Steele and the January 3, 2017 grievance.

The evidence does not show Steele was personally involved in any constitutional deprivation of plaintiff's rights or that he turned a blind eye to any constitutional deprivation, or that any constitutional deprivation occurred at all. Steele is entitled to summary judgment on the individual capacity claim against him.

Plaintiff's official capacity claim against Steele (as plaintiff acknowledges) is actually a claim against IDOC. Neither a state nor its officials acting in their official capacity are "persons" under 42 U.S.C. § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Therefore, an official capacity claim against an IDOC official does not present a cognizable claim against IDOC. Heard v. Tilden, 809 F.3d 974, 981 (7th Cir. 2016). So, damages are not recoverable on the official capacity claim against Steele under Section 1983.

Plaintiff also asks for an injunction in his official capacity claim against Steele requiring IDOC to give him a permanent black box exemption.[4] His claim is that IDOC had inadequate policies about black box exemptions, had an unconstitutional custom or practice regarding black box exemptions, and through the actions of Steele, an IDOC decisionmaker with respect to black box exemptions, imposed an unconstitutional policy by directing Wexford medical staff to only grant black box exemptions to inmates with broken wrists or arms.

To prevail, plaintiff must show IDOC had an unconstitutional policy. J.K.J. v. Polk County, 928 F.3d 576, 587 (7th Cir. 2019). "This can be done by showing either: (a) an express policy that, when enforced, causes a constitutional deprivation; (b) a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (c) that the constitutional injury was caused by a person with final decision policymaking authority." Id., at 587-88.

As discussed above there is no admissible evidence that Steele directed Wexford medical staff to only grant black box exemptions to inmates with broken wrists or arms.

As discussed in the order entered today on Wexford's motion for summary judgment, there is no evidence that the policy IDOC and Wexford employed of leaving the decision on black box exemptions to Wexford's medical providers was deliberately indifferent to inmates serious medical needs. The evidence presented in this case shows the medical staff members plaintiff asked for a black box exemption evaluated plaintiff's request in light of his medical conditions and exercised their professional judgment in either granting or denying the request. Plaintiff has not offered any evidence that a policy allowing the exercise of professional medical judgment in determining whether to grant black box exemptions is, itself, a violation of plaintiff's Eight Amendment rights.

There is also no evidence IDOC had an unconstitutional custom or practice regarding black box exemptions. The evidence shows that the times he was denied an exemption were the result of the exercise of professional medical judgment. He has no evidence, beyond his own experience of sometimes being denied an exemption, to support his claim of a custom or practice to deny black box exemptions. His own experience, in which the exercise of professional

---

[4] Steele is no longer employed at Dixon or by IDOC. Since Dixon's warden would be responsible for ensuring that any injunctive relief was carried out, it is the warden that should have been named in the official capacity action. See Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011).

7

medical judgment resulted in him often obtaining black box exemptions and sometimes being denied the exemptions, is not evidence of a custom or practice to deny such exemptions. Plaintiff presents no other evidence of a custom or practice of denying black box exemptions for reasons other than the professional medical determination that an exemption was not warranted under the circumstances.

      For the foregoing reasons, defendant's motion for summary judgment [412] is granted. Judgment is entered in favor of defendant, Wayne Steele, and against plaintiff. Any status hearings previously set before Magistrate Judge Jensen are stricken. This case is terminated.

Date: 9/10/2019  ENTER:

                                                     *Philip G. Reinhard*
                                                  United States District Court Judge

                                                               Electronic Notices. (LC)